# CRAGIN v. POWELL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 41. Argued and submitted October 26, 1888. — Decided December 17, 1888.

When lands are granted according to an official plat of their survey, the plat, with its notes, lines, descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and, so far as limits are concerned, controls as much as if such descriptive features were written out on the face of the deed or grant.

It is not within the province of a Circuit Court of the United States or of this court to consider and determine whether an official survey duly made, with a plat thereof filed in the District Land Office, is erroneous; but, with an exception referred to in the opinion, the correction of errors in such surveys has devolved from the earliest days upon the Commissioner of the General Land Office, under the supervision of his

official superior, and his decisions are unassailable by the courts, except in a direct proceeding instituted for that purpose.

When the General Land Office has once made and approved a governmental survey of public lands, the plats, maps, field notes and certificates having been filed in the proper office, and has sold or disposed of such lands, the courts have power to protect the private rights of a party who has purchased in good faith from the government, against the interferences or appropriations of subsequent corrective resurveys made by the Land Office.

One who acquires land knowing that it covers a portion of a tract claimed by another will be held either not to mean to acquire the tract of the other, or will be considered to be watching for the accidental mistake of others, and preparing to take advantage of them, and as such not entitled to receive aid from a court of equity.

THIS was a proceeding under a local statute of Louisiana for the purpose of ascertaining the boundary line between coterminous proprietors. The case is stated in the opinion of the court.

*Mr. J. D. Rouse,* with whom was *Mr. William Grant* on the brief, for appellant.

*Mr. J. S. Whitaker,* for appellees, submitted on his brief.

MR. JUSTICE LAMAR delivered the opinion of the court.

The appellees, Christian L. Powell, Joseph O. Ayo, and Ludger Gaidry, on the 1st of November, 1880, brought an action of boundary in the state court against the appellant, George D. Cragin, praying for a judgment of the court to fix the boundaries between certain lands, the property of appellees, and the contiguous lands belonging to appellant, and that he be ordered to deliver to appellees possession of the lands claimed and set forth in their petition.

On the 12th of July, 1880, the cause was removed into the Circuit Court of the United States, on the ground of diverse citizenship.

The answer of appellant sets up that he and his grantors, who had acquired the lands from original patentees, had been in public, peaceable and continuous possession of the lands

included in his deed by well-defined boundaries for more than thirty years, and without notice of the claims of any person whatsoever ; and that it is unnecessary to fix or establish any boundaries as prayed in the petition.

On the 2d of May, 1881, on motion of counsel for appellees, the court appointed a surveyor, for the purpose of ascertaining and fixing the boundary lines between the properties of the respective parties litigant, and ordered him to report his proceedings within reasonable time. By mutual consent of parties, Benjamin McLeran was selected by the court as such surveyor.

On June 6, 1881, McLeran filed his report of the survey made by him, and its results. From this report it appears that the township and sections in which the lands of the parties are located were officially surveyed in 1837 by one G. W. Connelly, as part of the public domain, and that the plat of such survey was filed in the United States Land Office of the district ; that he considered this survey of Connelly so incorrect, and the traces of its lines and corners so difficult to identify, that he was unable to locate any proper line between the lands in question, except upon the basis of a resurvey of the entire township, in accordance with certain corrective resurveys of adjoining townships, which had been made in 1850, and succeeding years, by one Joseph Gorlinski, a deputy United States surveyor. In this view, and guided by the theory of these corrective surveys, McLeran proceeded to run a line which he considered the proper boundary between the lands in question, and recommended its adoption to the court " as substantially such a line as would have been run had the whole township been resurveyed at the time when Deputy Surveyor Gorlinski was resurveying the adjoining townships." With this report he filed two maps, No. 1, a map of his own survey, and No. 2, a map designed to exhibit the discrepancies between the Connelly survey, and the survey of Joseph Gorlinski and that of McLeran himself. These discrepancies are : (1) By the Gorlinski and the McLeran surveys the township lacked half a mile of being six miles square, the eastern tier of sections thereof losing fully one-half of the area given by

them in the official plat, which official survey establishes a full township as prescribed by law; (2) By Connelly's plat "a bayou, known as Bayou Four Points," is located on appellant's lands, whilst by McLeran's map that bayou is located on the lands of appellees. In his supplemental report McLeran says "it appears that Bayou Four Points was erroneously reported by the original survey." The report also says: "The ridges on either side of the bayous are composed of a rich, black, loamy soil, . . . and when put under cultivation become the best sugar-producing lands in the South. The far greater portion of the township consists of a marsh, . . . worthless for cultivation."

The line recommended by McLeran places the lands of the appellees where those of the appellant are located by the official survey, and thus gives to the former the rich ridges along the bayous now in the possession of the latter.

The appellant was required to show cause by the 19th of November, 1881, why the report of McLeran should not be approved and homologated as being a true and correct survey in the premises. Thereupon the court, upon motion of the appellant, and against the opposition of the appellees, ordered that the cause be placed on the equity docket and proceed as in equity. Opposition to the report was afterwards duly filed, alleging that, if approved, the appellant would be deprived of lands to which he held title through mesne conveyances from United States patents, and of which he and his grantors had held possession for thirty years and upwards.

An amended answer by appellant and replication by appellees having been filed, the cause was put at issue. The court, upon the pleadings and evidence, confirmed the report of the surveyor, and rendered a decree fixing the boundary line between the two estates according to the prayer of the original petition.

The primary object of the action of boundary, under the Civil Code of Louisiana, is to determine and fix the boundary between contiguous estates of the respective proprietors. The provision of the code in article 845, and other provisions under title 5 of the code, that the limits must be fixed according to

the titles of the parties, are held by the Supreme Court of Louisiana to apply to cases in which neither party disputes the title of his antagonist. *Sprigg* v. *Hooper*, 9 Rob. La. 248, 253; *Zeringue* v. *Harang*, 17 Louisiana, 349; *Blanc* v. *Cousin*, 8 La. Ann. 71. The title to the property is not allowed to be litigated in this action, whose purpose is to fix a line or boundary between adjoining claims. When, therefore, in the course of the proceedings in this case, the surveyor appointed to survey and fix a boundary between the respective properties of the parties made a report, alleging mistakes in the official survey, and recommending a line, the effect of which, if adopted, would eject the appellant from the lands held by him under a claim of valid title, the court below ordered the case to be placed upon the equity side of the docket, thus bringing, it was supposed, within its equitable cognizance the essential rights of the parties, unaffected by the special limitations governing the action of boundary.

To determine the grounds upon which this court is asked to reverse the decree of the court below, it is necessary to advert in some detail to the facts as shown by the record.

In 1844 the United States issued to one Bach patents to certain portions of sections 10, 15 and 22 of township 20 south, range 17 east, in the southeast district west of the river, according to the official plat of the survey of said lands returned to the General Land Office of the United States by the surveyor general.

The appellant is the owner of the lands thus patented to Bach; and for many years he, and those under whom he claims, have been in possession of the lands, which, according to the official survey, were embraced in said patents.

In April, 1878, one Samuel Wolf purchased from the State of Louisiana portions of the same sections 10, 15 and 22, and also portions of sections 14 and 23 of the same township, all adjoining the lands of the appellant. These lands last described were given to the State as swamp lands, under the act of the 20th of March, 1849, and were noted as such on the official plat referred to above. In 1879 Wolf sold this property to Powell, one of the appellees, who in May, 1880, sold

an undivided half to the other two appellees; and in the same year they brought this action of boundary.

In support of the decree of the court below, it is urged by counsel for appellees that "there is nothing in the patents or title on record to show, by word or otherwise, any distinct calls, designating their location; nothing given descriptive of the property, except the township, the section and the range; nothing to describe the lands patented or conveyed, either as high lands, swamp or overflowed lands, or as having upon them any water course or bayou." He admits, however, that the plat in evidence contains upon its face the names of certain bayous, as "Bayou Cailliou," "Grassy," "Salé," and others; but says "that the original patents and conveyances, apart from the plat, are silent upon the subject, except that the defendant's title calls for land on Bayou Grand Cailliou."

In this view, which seems to be the one on which the court below must have acted, the learned counsel is mistaken. It is a well settled principle that when lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls so far as limits are concerned, as if such descriptive features were written out upon the face of the deed or the grant itself.

The patent of the State of Louisiana to Wolf was of the east half of southeast quarter of section 10, east half of east half of section 15, etc., "containing $635\frac{58}{100}$ acres tidal overflow according to the official plat of the survey of said lands in the state land office." By that plat the portions of the sections patented to Wolf were noted as tidal overflow; and as such they had been certified to the State by the General Land Office and the Interior Department. By the same plat Bayou Four Points was noted as running through those portions of sections 10, 15 and 22, which had been patented to Bach, who doubtless entered them, and obtained patents for them, because of the high lands so noted on this bayou.

Equally unsound is the contention on behalf of the appellees that "the land was sold and patented not as pointing to any

bayou, nor with reference to the character of the land, whether as swamp or high land." The statutes of the United States make it the duty of the surveyor general to note " all water courses over which the line he runs may pass; and also the quality of the lands." Rev. Stat. § 2395, subdiv. 7. And they provide that a copy of the plat of survey shall be kept for public information in the office of the surveyor general, in the offices where the lands are to be sold, and also in the office of the Commissioner of Public Lands. They further provide that " the boundary lines actually run and marked in the surveys returned by the surveyor general shall be established as the proper boundary lines of the sections or subdivisions for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof." Rev. Stat. § 2396, subdiv. 2.

The surveyor, McLeran, insists not only in his original report of his survey, but also in his second explanatory report, and in his oral evidence, that this governmental survey is incorrect; some of it more incorrect than the rest, but especially erroneous in the length of its lines and in the location of Bayou Four Points on the portions of the sections patented to the appellees. The plat, he reports, is totally inconsistent with that of the governmental survey, and should have been rejected by the court below.

Whether the official survey made by Connelly is erroneous, or should give way to the extent of its discrepancies to the survey reported by McLeran, is a question which was not within the province of the court below, nor is it the province of this court to consider and determine. The mistakes and abuses which have crept into the official surveys of the public domain form a fruitful theme of complaint in the political branches of the government. The correction of these mistakes and abuses has not been delegated to the judiciary, except as provided by the act of June 14, 1860, 12 Stat. 33, c. 128, in relation to Mexican Land claims, which was repealed in 1864, 13 Stat. 332, c. 194, § 8. From the earliest days matters appertaining to the survey of public or private lands have devolved upon the Commissioner of the General

Land Office, under the supervision of the Secretary of the Interior. Rev. Stat. § 453. The Commissioner, in the exercise of his superintendence over surveyors general, and of all subordinate officers of his bureau, is clothed with large powers of control to prevent the consequences of inadvertence, mistakes, irregularity and fraud in their operations. Rev. Stat. § 2478; *Bell* v. *Hearne*, 19 How. 252 and 262. Under the authority of specific appropriations by Congress, for that purpose, the resurveys of public lands have become an extensive branch of the business of the General Land Office.

In 1848 the surveyor general of Louisiana urgently recommended a resurvey of certain townships in the district of Louisiana, and of all lands fronting on Bayou Cailliou, in Terre Bonne, which had been surveyed by F. G. Connelly and other named surveyors. It was in accordance with this recommendation that Gorlinski made the resurveys above referred to. But the Commissioner of the General Land Office very soon put an end to this system of resurveys, and in a letter to the surveyor general, which throws no little light upon the subject, he says :

" The making of resurveys or corrective surveys of townships once proclaimed for sale is always at the hazard of interfering with private rights, and thereby introducing new complications. A resurvey, properly considered, is but a retracing, with a view to determine and establish lines and boundaries of an original survey, . . . but the principle of retracing has been frequently departed from, where a resurvey (so called) has been made and new lines and boundaries have often been introduced, mischievously conflicting with the old, and thereby affecting the areas of tracts which the United States had previously sold and otherwise disposed of."

It will be perceived that McLeran's survey not only disregards the old original survey making new lines and boundaries, but does so in contravention of the order from the Land Office that those resurveys should not be extended into this township.

That the power to make and correct surveys of the public lands belongs to the political department of the government

and that, whilst the lands are subject to the supervision of the General Land Office, the decisions of that bureau in all such cases, like that of other special tribunals upon matters within their exclusive jurisdiction, are unassailable by the courts, except by a direct proceeding; and that the latter have no concurrent or original power to make similar corrections, if not an elementary principle of our land law, is settled by such a mass of decisions of this court that its mere statement is sufficient. *Steel* v. *Smelting Co.*, 106 U. S. 447, 454–5, and cases cited in that opinion; *United States* v. *San Jacinto Tin Co.*, 10 Sawyer, 639, affirmed in 125 U. S. 273; *United States* v. *Flint*, 4 Sawyer, 42, affirmed in *United States* v. *Throckmorton*, 98 U. S. 61; *Henshaw* v. *Bissell*, 18 Wall. 255; *Stanford* v. *Taylor*, 18 How. 409; *Haydel* v. *Dufresne*, 17 How. 23; *West* v. *Cochran*, 18 How. 403; *Jackson* v. *Clark*, 1 Pet. 628; *Niswanger* v. *Saunders*, 1 Wall. 424; *Snyder* v. *Sickles*, 98 U. S. 203; *Frasher* v. *O'Connor*, 115 U. S. 102; *Gazzam* v. *Phillips*, 20 How. 372; *Pollard* v. *Dwight*, 4 Cranch, 421; *Taylor* v. *Brown*, 5 Cranch, 234; *McIver* v. *Walker*, 9 Cranch, 173, 177; *Craig* v. *Radford*, 3 Wheat. 594; and *Ellicott* v. *Pearl*, 10 Pet. 412.

The reason of this rule, as stated by Justice Catron in the case of *Haydel* v. *Dufresne*, is that "great confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done and divisions more equitably made than the department of public lands could do." 17 How. 30.

It is conceded that this power of supervision and correction by the Commissioner of the General Land Office is subject to necessary and decided limitations. Nor is it denied that, when the Land Department has once made and approved a governmental survey of public lands, (the plats, maps, field notes and certificates all having been filed in the proper office,) and has sold or disposed of such lands, the courts have power to protect the private rights of a party who has purchased, in good faith, from the government against the interferences or

appropriations of corrective resurveys made by that department subsequently to such disposition or sale. But there is nothing in the circumstances of this case which brings it within any such limitations.

The appellee, Powell, is a surveyor, who, in the year 1877, while employed by appellant to make a survey of his plantation, thought he discovered an error in the public lands, whereby it would appear that his lands were not in fact situated on Bayou Four Points. From his own evidence it is shown that he induced Wolf to obtain the patent from the State of Louisiana for the land which he, the said appellee, purchased from him. When he purchased this land from Wolf he knew that the tracts to which he was laying claim had been possessed and cultivated by the appellant for a long period of years.

An advantage thus obtained, a court of equity will not readily enforce. As was said in *Taylor* v. *Brown*, 5 Cranch, 234, 256:

"The terms of the subsequent location prove that the locator considered himself as comprehending Taylor's previous entry within his location. . . . He either did not mean to acquire the land within Taylor's entry, or he is to be considered as a man watching for the accidental mistakes of others, and preparing to take advantage of them. What is gained at law by a person of this description, equity will not take from him; but it does not follow that equity will aid his views."

*For the reasons above stated, the decree of the Circuit Court is reversed, with directions to dismiss the petition of the plaintiffs below at their costs.*