[No. 19504.   Department Two.—March 25, 1896.]

CHARLES E. VAUGHAN, APPELLANT, *v.* WILLIAM M. KNOWLTON, ET AL., DEFENDANTS. E. H. McCHESNEY, RESPONDENT.

QUIETING TITLE—DISPUTED BOUNDARY—LOCATION OF HALF-SECTION LINE—EXCESS IN LENGTH OF SECTION—NONSUIT.—In an action to quiet title, where the controversy was as to the location of a half-section line which bounded plaintiff's land upon the north and defendant's land upon the south, and it appeared that there was an excess of 80.50 feet in the length of the section from north to south, and both parties claimed a measurement from the south line of the section, the defendant claiming that the disputed boundary should be located only 2,640 feet, or half of a true section, north of such south line, while plaintiff's proof tended to show that

the survey of the section had located the half-section line 35.83 feet fur-
ther to the north, and there was no proof tending to show that any other
survey had been made which located the half-section line: Held, that if
the subdivision line in dispute had been run and marked upon the
ground, it must be adhered to, and that, in the absence of any survey
fixing the line, the law would fix it at the actual center of the section,
42.25 feet north of the line claimed by defendant, and that it was error
to grant a nonsuit of the plaintiff upon defendant's motion.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial.
J. W. TOWNER, Judge.

The facts are stated in the opinion.

*E. M. Hanna,* and *J. W. Ballard,* for Appellant.

Wood's testimony is sufficient to establish, *prima facie,*
the location of the section corners on the ground, and
also the center stakes determining the location of the
half-section line. (*Gordon* v. *Booker,* 97 Cal. 586; *Esh-
leman* v. *Malter,* 101 Cal. 233; *Miller* v. *Topeka Land Co.,*
44 Kan. 354, and cases cited.) As plaintiff proved all
material allegations except title by prescription, the
nonsuit was improperly granted. (*De Ro* v. *Cordes,* 4
Cal. 118; *Sanchez* v. *Neary,* 41 Cal. 485; *Foote* v. *Rich-
mond,* 42 Cal. 439; *McIntyre* v. *Trautner,* 63 Cal. 429;
*Leahy* v. *Southern Pac. R. R. Co.,* 65 Cal. 150; *Simpson*
v. *Applegate,* 67 Cal. 471.)

*Victor Montgomery,* for Respondent.

If the nonsuit was properly granted on any ground,
the ruling granting it cannot be disturbed. (*Kauffman*
v. *Maier,* 94 Cal. 275; *Shanklin* v. *Hall,* 100 Cal. 26.)
Both parties claim under a common vendor, and are
bound by the survey and monuments made by the com-
mon vendor. (Tyler on Boundaries, 335; *Chapman* v.
*Polack,* 70 Cal. 487–96; *Lebeau* v. *Bergeron,* 14 La. Ann.
494.)

HAYNES, C.—Action to quiet title. At the conclusion
of plaintiff's evidence McChesney's motion for a nonsuit
was granted, and plaintiff appeals from the judgment

thereon, and from an order denying his motion for a new trial.

The property in controversy is described in the complaint as the northeast quarter of the northeast quarter of the southwest quarter of section 22, township 4 south, range 10 west, San Bernardino base and meridian, containing ten acres, more or less, and also by metes and bounds. The latter description will be noticed later.

None of the defendants answered except McChesney. His answer denies plaintiff's ownership " of a strip of land 35.83 feet wide, off the north side of the tract of land described in plaintiff's complaint," admits that he claims said strip, and alleges that he is the owner thereof, and entitled to its possession. He also denies plaintiff's description by metes and bounds, and alleges a different description. In his second defense McChesney describes his own land as the south half of the southeast quarter of the southeast quarter of the northwest quarter of the same section, and also describes it by metes and bounds, and alleges the area to be five acres, more or less.

Defendant's land lies north of and adjoins plaintiff's, and the only dispute is as to the location of the east and west half-section line which separates the two lots, the defendant contending that it is 35.83 feet south of the line contended for by plaintiff. The true location of that line is the only question at issue between the parties as to which evidence was given.

It was stipulated between the parties that both derived title from a common source, and that the deed from Alfred Robinson, trustee, to John J. Weglein, dated April 6, 1874, conveyed a fee-simple title to the land described therein, viz: "The north half of the south half of section 22" of said township and range. Some further stipulations were made, which need not be noticed.

Plaintiff put in evidence the several mesne conveyances from Robinson down to himself, each of which described plaintiff's land as the northeast quarter of the

northeast quarter of the southwest quarter of section 22, and several of these conveyances also added thereto, " or known as lot 7 of plat showing subdivision of north half of south half of section 22, surveyed and sworn to January 10, 1871, by George C. Knox, deputy county surveyor, as per map"; the contents being stated at ten acres.

The only witness examined was S. O. Wood, a civil engineer, who made a survey for A. W. Danforth in December, 1889. A plat of the section, made from the notes of said survey, was put in evidence by the plaintiff. Danforth's north line is also the same half-section line which separates plaintiff's and defendant's lots. This section was not surveyed by the United States, it having been within a confirmed Mexican grant.

Mr. Wood testified that he found stakes at the southeast, the northeast, and northwest corners of the section. The section lines, measured from north to south, are 5,360.50 feet in length, showing an excess of 80.50 feet. The east and west half-section line shown upon said plat is 4.42 feet south of the actual center of the section. Plaintiff's description of his lot by metes and bounds commences at a point 1,993.5 feet north of the south line of the section (being the claimed southeast corner of his lot), and from that point runs north 682.33 feet to the center line of the section as located upon the plat; thus making said center line 2,675.83 feet from the south line of the section, and 2,684.67 feet from the north line.

Defendant in his description by metes and bounds takes the same point on the south line of the section from which to measure, and places his south line 2,640 feet therefrom, thus placing the center line of the section 35.83 feet further south than the line contended for by the plaintiff, and 40.65 feet south of the actual center of the section.

If, therefore, the evidence was such as to justify a finding that the half-section line is where the plaintiff claims it to be, or is at any place north of the line

claimed by the defendant, the nonsuit should have been denied.

The south line of the section is necessarily established by the pleadings and evidence, since the defendant adopts the same line, as is conclusively shown by his admission in his answer that he claims the northerly 35.83 feet described in the plaintiff's complaint, and his measurements set out in his answer show that the south line of the section which he adopts as his starting-point is identical with the south line of the section as found by the surveyor and adopted by the plaintiff. This section measures more than a mile, north and south, but it is an interior section, and does not touch either the north or west lines of the township, and is therefore not a fractional section. It contains an excess of 9.98 acres, if we assume that it measures just one mile east and west. If no lines had ever been run upon the ground subdividing the section, all the parcels described in the several deeds and in the pleadings would have been capable of exact ascertainment, and hence would have been definite and sufficient, and, in that case, the evidence would have been quite sufficient to sustain plaintiff's case, since there could have been no conflict in the descriptions in their deeds, and the half-section line, when run, would have fixed the location of each without conflict; and, in case the lines had never been run, or in any way established upon the ground, the east and west quarter line must have been run so as to divide the section in two equal parts, and that would have placed the line 4.42 feet north of the line claimed by plaintiff, the effect being to move both parties that much farther north. Such, at least, is the requirement as to surveys made by the United States, and when surveys are extended over confirmed Mexican grants the intention is that they shall conform as nearly as possible to the government surveys. Section 2396 of the Revised Statutes of the United States provides that "the corners of half and quarter sections, not marked on the surveys, shall be placed as nearly as possible equidis-

tant from those two corners which stand on the same line." But where the subdivision line has been run and marked upon the ground, and can be identified, it must be adhered to. (*Cragin* v. *Powell*, 128 U. S. 697.)

If, then, there was no original subdivision of the section upon the ground, the claim of the plaintiff must have been sustained. There was evidence, however, tending to show that a survey had been made, not only of the exterior lines of the section, but of the half-section line in dispute. Not only was mention made of a map of a survey of the north half of the south half of the section (which was not put in evidence), but Mr. Wood testified that at the center of the section he found a stake (marked upon the plat put in evidence as "St. B., Old Stake"); and on the east line of the section he also found an old stake, marked upon the plat, "Old Stake, St. C." These stakes are at the same distance from the south line of the section, viz., 2,675.83 feet, and also the same distance from the north line of the section, viz., 2,684.67 feet.

He said the stake at "B" was not a stake such as is usually set by the land company, and took particular pains to look around, and that there were no other stakes there. He then went to the northeast corner of the section, and found a surveyor's stake, "what is termed the Capt. Healey stake." The witness then followed down the east line of the section, and found one of the land company's stakes at the southeast corner of the section. His testimony as to his measurement on that line is somewhat confused, partly because once he referred to "this point" (pointing to map) without further designation of it, and in another place the word "to" is used, when it is evident the word "from" should have been used. But, read in connection with the plat, it is readily understood, though the distance from the northeast corner of the section down to the east and west line, which subdivides the north half of the section, is not given except upon the map. The distances covering the Danforth land, the Polhemus

land, and from the latter to the southeast corner of the section, are readily understood, and correspond with the distances already stated and shown on the map.

Then the witness went back to the northeast corner of the section, and measured west 2,640 feet (one-half mile), and found " a little stake set there by the land company." From that point he turned " and ran down 1,320 feet south, and found a stake there, what is known as the land company's stake; from there I measured down and found this stake again, which was found at station ' B,' 1,364.67 feet, I found what corresponded to my measurement, and we then concluded it was .the center of the section," though he said it did not " correspond exactly with the general outlines of the company, nor did it correspond exactly with the United States survey, because it is a rule of the United States survey that the posts shall be placed in the center of the section, and they were not, although very nearly, in the center, and these lines being parallel, and having this line at station ' B,' I produced this line here, and turned my angle, and gave that as the line." The witness also gave the distance from " B " to the north and south lines of the section, as before stated. The stakes at " B " and "C " were similar, though different from the other stakes in that section. But this difference in the stakes strengthens rather than weakens the evidence tending to establish that line. The stakes at the corners of the section were recognized as Capt. Healey's stakes; but in some of the deeds in plaintiff's chain of title reference is made to a subdivision of the north half of the south half of the section by George C. Knox, deputy county surveyor, in 1871, and to this survey may be referred the old stakes " B " and " C," which are different from " Capt. Healey's" stakes.

At the time of this survey by the witness in 1889, he and Mr. Danforth set a stake made from a railroad tie beside the old stake at " B," and said: " I did n't allow the stake to be disturbed, because that was evidently a former stake." In March, 1894, the witness was at this

point " B " again, and found the old stake gone, and the stake he had put beside it lay over on the ground, but right south of it, a distance of 34.13 feet, was found one of the land company's stakes; "that was not there at the time I made the survey in 1889; that had been set subsequent to that time."

The witness said he did not look for any stake between " B " and " C "; that he found no stake on the line south of " B " in 1889; that the stake found south of " B " in 1894 " would correspond very closely to the map of the surveys which the Stearns Rancho Company claim to the land company's subdivision."

The only ground of defendant's motion for nonsuit necessary to be noticed is that " the evidence fails to establish that the land described in the complaint is located in the south half of section 22."

The motion for a nonsuit should have been denied. The stakes at " B" and " C," though distinguishable from the land company's stakes, were such as surveyors use. The one at " B" was " centered with a nail." Both were precisely parallel to the north and south lines of the section, a circumstance that could not be reasonably accounted for upon any theory other than that they marked a survey. It must also be assumed as clearly proven that the stake found in 1894 was a recent one, and had no existence in 1889. No other stake is shown to correspond to it either to the east or west.

There being no evidence tending to show that any different line had ever been run upon the ground than the one indicated by the old stakes found at " B" and " C," and that line being approximately in the center of the section, it should be taken, in the absence of all other evidence, as the half-section line. There was no evidence of a different line ever having been run upon the ground, and, if the evidence was insufficient to show that any line had been run, the law would fix the line at the center of the section where it should have been. If it can be shown that the line was actually run at a different place from that indicated by the stakes found

by the witness, and that place can be identified, such line must prevail. If it cannot, the line "B" "C" must prevail, unless it is shown to have been unauthorized, and if no authorized survey can be established, the actual center of the section must be taken as the line. It is true there was no direct evidence that the line contended for by plaintiff was an authorized survey, but the fact of its close correspondence to the actual center line of the section, and the presumption, in the absence of evidence to the contrary, that the line, if run, was so run as to divide the section in two equal parts, is sufficient to require a reversal of the judgment. We come to this conclusion with the less hesitation because the question of boundaries of land is important, and should be fairly and finally settled and fixed, to the end that further disputes and litigation shall be avoided.

The judgment and order appealed from should be reversed, and a new trial granted.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.

McFARLAND, J., TEMPLE, J., HENSHAW, J.,