## DISPUTED TITLE.

[Circuit Court of Lucas County.]

GEORGE CHALLEN v. JOHN V. MARTIN ET AL.

Decided, November 25, 1905.

*Deeds—Ambiguity in—Giving Rise to Uncertainty as to Dividing Line—
Agreed Line Becomes the Established Line, When—Not Contrary
to the Statute of Frauds—Erroneous Lines Distinguished from
Uncertain Lines.*

In a suit in equity, where the parties on both sides are seeking to
quiet their title to a strip of intervening land, and the court is
confident from the evidence that the purpose of the original
grantor was to give to his two sons-in-law equal portions of the
disputed strip, and it was so understood by them, and a line mid-
way of the strip was acquiesced in by them as the dividing line,
and the occupation has not been of such a character as to give title
by prescription, a decree will be granted making such line the
established boundary between subsequent grantees and heirs, not-
withstanding an ambiguity in the original deeds gives color to the
claim of the plaintiff to a legal title in the whole strip.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

The case of George Challen v. John V. Martin et al is in this
court by way of appeal. I can not do better, perhaps, than by
reading the pleadings.

The petition states that the plaintiff is the owner in fee simple
of the northwest quarter of Section No. 19, town three
north, of range No. 9 east, in Jackson township, Wood county,
Ohio; that said northeast quarter contains one hundred and sev-
enty-nine acres, and that each of the defendants as widow and
heirs at law of Robert M. C. Martin, deceased, claims some
estate and interest adverse to plaintiff in and to east nineteen
acres of said northwest quarter; but plaintiff avers that each of
said defendants had no estate or interest whatever in and to said
quarter section, or in and to any part thereof. Wherefore,
plaintiff prays that he may be adjudged the owner in fee simple
of said premises, freed from all claims or estate or interest
therein of said defendants and each of them, and that he may
have all other relief to which, in equity, he may be entitled.

The defendants, for answer to the petition of the plaintiff, say, that John V. Martin, Fannie Helper, Charles E. Martin, Eliza E. Sargent, Isaac Martin, Annie C. Derr, Jennie Lease, and Samuel Martin are the only heirs at law of Robert M. C. Martin, deceased, and that the defendant, Barbara Martin, is his widow; that on the 27th day of October, 1862, Abraham Kagy, who was then the owner in fee simple of the north half of Section No. 19, township three north, range nine east, containing three hundred and thirty-eight acres of land, deeded to Daniel Spitler the northwest quarter of said section, which said deed set forth as containing one hundred and sixty-eight and 86-100 acres of land, to Robert M. C. Martin, the northeast quarter of said section, which said deed set forth as containing one hundred and sixty-nine and 45-100 acres, intending thereby to divide said half-section equally between said Daniel Spitler and Robert M. C. Martin; that said deeds to Daniel Spitler and to Robert M. C. Martin were recorded on October 27th, 1861, and were recorded in Volume "T," pages 404 and 405, of the records of Wood county, Ohio; that the said Daniel Spitler and Robert M. C. Martin, ascertaining that the north and south quarter-section line did not divide said north half of said quarter section in two equal parts, and that the northwest quarter of said section contained one hundred and seventy-eight acres of land, and that the northeast quarter contained one hundred and sixty acres, entered into an agreement to have a line established dividing said half-section into two equal parts, and that the said Robert M. C. Martin should be the owner in fee simple of the land in said half-section lying east of said line, and that the said Daniel Spitler that lying west of said line; that thereafter, in the year 1879, in pursuance of said agreement, the said Daniel Spitler caused said line to be established and the corners of said two tracts of land were set 2.36 chains west of the west line of the northeast quarter of said section; that the survey establishing said line is recorded in the records of the surveyor of Wood county, Ohio, as survey number 776; that said Daniel Spitler was the grantor, through his heirs, to the plaintiff herein, of said northwest quarter of section number nineteen, township three north, range nine east; that since

the year 1879 they have had open, notorious and adverse possession of nine and 45-100 acres off the east side of the northwest quarter of said section east of the line as established as aforesaid; that since the date of the conveyance of the northeast quarter of said section to Robert M. C. Martin, the said Robert M. C. Martin and his heirs have paid the taxes on the said nine and 45-100 acres off the east side of the northwest quarter of said section, amounting with interest to the sum of $—; that said defendants are the owners of said strip of land off the east side of the northwest quarter of said section 2.36 chains wide, containing nine and 45-100 acres of land.

And the defendants allege that before the plaintiff parted with any valuable consideration for the said northwest quarter of said section, the plaintiff had knowledge and notice of the defendants' claim to said premises. The defendants deny each and every allegation in the petition contained, not expressly admitted herein. And for further answer to the petition the defendants say, that in the year 1903 the plaintiff rented of the defendants the said strip of land off the northwest quarter of said section, 2.36 chains wide, containing nine and 45-100 acres of land, and that the possession of said plaintiff of said premises is the possession of the defendants. Wherefore, the defendants pray that they may be adjudged to be the owners in fee simple of said strip of land off of the east side of the northwest quarter of Section No. 19, township three north, range nine east, 2.36 chains in width, containing nine and 45-100 acres of land, free from all claims or estate of the plaintiff, that the title of the defendants thereto may be quieted as against the plaintiff, and to all relief to which, in equity, they may be entitled.

For reply to the answer and cross-petition of the defendants the plaintiff represents and says to the court: That he admits that the parties named in said answer are the only heirs at law of Robert M. C. Martin, deceased; admits that on the 20th day of October, 1850, Abraham Kagy, by deeds duly executed, and who was then the owner in fee simple of the north half of Section No. 19, town three north, range nine east, deeded to Daniel Spitler the northwest quarter of said section, and to Robert M. C. Martin the northeast quarter of said section;

admits that said deeds so executed were recorded in Volume "T," pages 404 and 405 respectively, of the records of deeds of Wood county, Ohio; admits that Daniel Spitler, through his heirs, was the grantor to plaintiff herein of the northwest quarter of said Section No. 19, township three north, range nine east, but denies each and every other allegation in said answer and cross-petition made, set forth and contained and not herein specifically admitted. And for further reply herein plaintiff says, that in the original survey of the north half of Section No. 19, the excess therein over and above eighty acres for each half quarter section in said north half of said Section No. 18, contained under said original survey ninety-eight acres of land; and since the time of said original survey no change has been made therein. Wherefore, plaintiff prays as in his petition herein.

It appears from the pleadings, as well as from the evidence, which we have here, that the controversy is about a strip of land containing about nine acres, lying along a part of the east side and off a part of the northwest quarter of section nineteen in Jackson township. The action is brought by the plaintiff to quiet his title to this strip of land. The defendants on the other hand assert their ownership to the strip, and they desire to have their title quieted. It appears that this land was conveyed by the United States government to Andrew Hite by two patents of the date of August 10, 1837, the patents conveying to him all the north half of that section; the one patent covering the north half of the northwest quarter, and the north half of the northeast quarter, containing one hundred and sixty-nine and forty-two-hundredths of an acre; the other patent covering the south half of the northwest quarter, containing eighty-nine acres and forty-four hundredths of an acre, and the south half of the northeast quarter, containing eighty acres. It appears from these patents that the amount of land contained in these tracts was about a hundred and sixty-nine acres. In one it is mentioned as 169 and 44-100 and the other 169 and 42-100, but in this discussion I will omit the fractions because they are not essential. I shall only say that what is said about them in the description confirms the view that we take as to what was intended by the parties.

By certain conveyances the title to all this north half of the section was vested in one Abram Kagy about the middle of the last century. Kagy was the assignee of all this north half of the section, and by two deeds of a certain date, October 27, 1852, he conveyed all of this north half of the section to his sons-in-law, Spitler and Martin. To Spitler he conveyed the northwest quarter of the section, and to Martin he conveyed the northeast quarter of the section. It seems that he was aware of the fact that there was in this half section more than three hundred and twenty acres; that it overrun about eighteen acres. His purpose seems to have been, however, to divide the tract evenly between his two sons-in-law. It would appear from the deeds that they were purchasers and paid equal consideration for the amount conveyed to them; so he describes the amount conveyed to one as being one hundred and sixty-nine acres, or about that, and the amount conveyed to the other as a hundred and sixty-nine acres, or about that. As a matter of fact, the government survey, which was shown to us and is in evidence, discloses signs of this overplus to the west eighty acres of this half-section, and perhaps if there was no more in these deeds than a description of these subdivisions of the survey, the part deeded to Spitler would have carried the whole overplus of eighteen acres, and the deed to Martin would have carried the hundred and sixty acres; and perhaps it is true that even with what appears in the deeds in addition to the description of these subdivisions that legal title to no more than one hundred and sixty acres was conveyed to Martin and that legal title to one hundred and sixty acres and that additional eighteen acres was conveyed to Spitler, but we have to consider here more than the bare naked legal title of the parties; it is a suit in equity and the equitable action of the court is invoked and required.

Notwithstanding what may have been the result with respect to the legal title, we are entirely confident from the evidence that the purpose of Mr. Kagy was to give to each of his sons-in-law an equal portion of this tract of land and that it was so understood by grantor and grantees. The plaintiff in the case has, by conveyances, become the owner of the portion conveyed to Spitler; the defendants in the case are the owners of the north-

east quarter of the portion conveyed to Martin. Mr. Challen, the plaintiff, became the owner of the northwest quarter some two years ago. In 1879 Martin and Spitler came together and took to their aid a surveyor and undertook to divide this property up in accordance, apparently, with their understanding of their rights in their respective deeds. They knew where the government survey located the line between these quarter sections; they knew where that line was, that was used as a starting point from which to determine a new line to divide their two tracts of land, and a new survey was made locating the line about eight rods west of the line of the government survey. The width of the strip, I believe, is 2.36 chains.

It does not appear to us from the evidence that there has been any adverse possession of this disputed strip, which is the east nine rods, since that time; that is to say, we do not find the grantors of the plaintiff have occupied it at any time in an adversary way. Nor do we find that the grantors of the defendants or the defendants have occupied it in such a way that they could have acquired a title to it by prescription. That part of the territory has, during most of these years, been undeveloped, uncleared, and woodland, and in no fit condition for cultivation. A little strip upon the north part was cleared up some twenty or twenty-two years ago, but the most of it has during most of these years since the survey was made been woodland. There has been no fence run between the lines since this survey was fixed by stones set. What was done suggesting any adverse claim appears to have been done by mistake of the occupiers or by acquiescence. The intention of the parties was to fix this line between them and to claim up to the line ever since, and this has been done by each and has been done by acquiescence of the other in each case. There has been no dispute about that. The mutual intent and purpose has been quite manifest.

It has been urged on behalf of the plaintiff that this has not been effective to transfer the title of these nine acres to the defendants; that this is not a question of fixing a disputed boundary; not a question of fixing a boundary line at all, but it is a question of an attempt to transfer the title to nine acres of land from one to another.

We do not take that view of it. We think there is enough in the deeds from Kagy to give rise to the doubt of the ownership of this strip of land; that the description of the number of acres in the deed was enough to give rise to an ambiguity, that the fact that these parts were described as subdivisions of the section is not enough to vest with absolute certainty so that there can be no doubt about the line between the tracts, and whenever there is such uncertainty, the authorities are clear that the parties can fix the line, and this would not be contrary to the statute of frauds. It seems to us from the consideration of certain cases cited to us that even if this were not so, even if it were a matter of admitting of uncertainty, that still the parties might agree upon the line of demarkation between their respective tracts, and holding up to such line for twenty-one years would fix the title of the parties up to the line.

I can not take time to review the authorities that have been cited. I will say that the cases cited will be found in 7 O. S., 99; 21 O. S., 258; 21 O. S., 115; 16 N. Y., 354; 128 U. S., 691; 35 Pa. St., 409; 30 O. S., 417; 17 O. S., 130. We have examined these cases and other cases. In the case of *McAfferty* v. *Conover*, in 7 O. S., 99, which was an action in ejectment, Judge Swan, in starting out in his opinion, says:

"No doubt the rights of these parties could be readily adjusted, and upon just principles in a court of equity. Our inquiry now is: What are their rights at law?"

And so he proceeds to inquire into that question, and, reading from page 106:

"Thus where the true lines are in fact unquestionable, and parties, by mistake, agree upon an erroneous line as their boundary line, and suppose the line agreed upon to be their true line and fence to it, their acts and declarations do not operate in the nature of an estoppel. A party will not forfeit his estate by a mere mistake; nor can the statute of frauds be thus evaded. Something more is required to transfer the title. If there has been acquiescence, adverse possession, and improvements made in accordance with such erroneous line, under such circumstances as that the owner is chargeable with gross negligence amounting to fraud, an estoppel *in pais* may probably permanently establish the erroneous line."

Well, that is not in this case. It is not a case of an erroneous line being agreed upon by mistake of the parties. The parties with their eyes wide open agreed upon these lines. Judge Swan, continuing, says:

"There is another class of cases where the line between the owners of land can not with certainty be ascertained; and because uncertain, they agree upon and establish the line. Such agreement settles the line; not by estoppel, but by agreement."

A case very near like the kind of a case referred to by Judge Swan, is that of *Bobo* v. *Richmond,* found in 25 O. S., 115, and yet the case differs in this that there was not an uncertainty about the true line. It is similar to the case at bar in other respects; that is to say, there was not an uncertainty as to the true line of survey of these quarters. Nevertheless, the court held in that case where parties agreed upon a line and held up to it that that should determine their rights. I shall not take time to read from this decision, but I will call attention to the dissenting opinion of Judge McIlvaine, emphasizing the point that was decided in court. On page 126, he says:

"The grounds of dissent will readily appear from the above statement of the case. It will be observed that the case, as presented to us upon the record, as I understand it does not involve any question under the statute of limitations. The defense of twenty-one years of adverse possession must be regarded as having been abandoned by the defendant. Such was the effect of his disclaimer made in open court, at the trial. Nor does the judgment rest upon the doctrine of 'an agreed line.' There is no pretense that there was doubt or dispute, at any time, as to the location of the true line between the east and west halves of the quarter section."

Judge McIlvaine seems to have entertained the idea that is urged by counsel for plaintiff, that in order that the doctrine of "an agreed line" shall take effect, there must be doubt, dispute and uncertainty. We think that there was ground for doubt here, but we do not deem that essential in view of this decision of the Supreme Court.

The equities of this case, it seems to us, are very clearly with the defendants. The plaintiff bought with the understanding that he was only receiving a hundred and sixty-nine acres, and

he paid a certain price per acre, and only paid for a hundred and sixty-nine acres.

Soon after he bought this land· he conceived the idea that he had .title to this strip. If he had· the legal title to it, it was purely technical. The equities are against him, and our view of the matter is, to conclude without further discussion, that the petition should be dismissed, prayer denied, and decree in favor of the defendants upon the cross-petition.

*Edward Beverstock*, for plaintiff.

*James O. Troup* and *F. P. Riegle*, for defendants.