FERRY v. FOWLER.

No. 2046.   Decided January 5, 1910 (106 Pac. 506).

PUBLIC LANDS—RESERVATIONS—BOUNDARIES.  Where the federal government has by an official survey fixed the boundaries of an Indian reservation pursuant to proclamation by the President, and rights have been acquired thereunder by the issuance of patents to lands outside of the boundaries as fixed by the survey, the patents are valid as against any subsequent survey, including such lands within the reservation.  (Page 38.)

APPEAL from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Action by Edward P. Ferry, by William Montague Ferry, and another, his general guardians, against R. E. Fowler.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*F. J. Gustin* and *Zane & Stringfellow* for appellant.

*Richards, Richards & Ferry* for respondent.

APPELLANT'S POINTS.

In determining boundaries of land courses and distances yield to monuments or natural objects.   The reason of the

rule is that it is the intention of the grant to convey the land actually surveyed and mistakes in courses or distances are more probable and more frequent than marked trees, mountains, rivers or other natural objects capable of being clearly designated and accurately described. (*McIvers Lease v. Walker,* 4 Wheat. [U. S.] 444, 17 Law Ed., 445; *White v. Williams,* 48 N. Y. 344; *Beldon v. Seymour,* 8 Conn. 19; *Howe v. Bass,* 2 Mass. 380; *Walrod v. Flanigan,* 75 Ia. 365; *Hughes v. Cawthorn,* 35 Fed. 248; *Ogilvie v. Copeland,* 145 Ill. 98.) The intention of the United States government was to grant to the Indians and reserve to the United States the land lying on each side of the Uintah river in Utah Territory, extending to "the crest of the first range of contiguous mountains on each side." When boundaries of land are fixed by known and unquestionable monuments, although neither courses nor distances nor the computed contents corresponds, the monuments must govern. (*Pernam v. Wead,* 6 Mass. 131.) An executive order by the President of the United States by which is set apart as a reservation for certain specified Indians a certain scope of country has the same effect as a treaty would have had with the Indians for the same purpose, and there can be no doubt of the power of the President to reserve such lands for the use of the Indians. (*McFadden v. Mountain View Ming. & Mill'g Co.,* 97 Fed. 673; *John Campbell Appeal,* 6 Land Dec. 317; *W. N. Braden Appeal,* 1 Land Dec. 101; *Reservation,* 1 Land Dec. 702-3. This purpose and the stipulation of the United States could not be defeated by the action of any officers of the land department. (*U. S. v. Carpenter,* 111 U. S. 356; Lindley on Mines, sec. 183; *Mono Fraction Lode Mining Claim,* 31 Land Dec. 121; *Acme Cement & Plaster Co.,* 31 Land Dec. 125; *Gibbs v. Anderson,* 131 Fed. Rep. 39; *Instructions of the Sec. of Int.,* 31 Land Dec. 178.) A patent may be collaterally impeached in any action and its operation as a conveyance defeated by showing that the department had no jurisdiction to dispose of the land; that is, that the law did not provide for selling it, or that it had been reserved for sale,

or dedicated to special purposes, or had been previously transferred to others. (2 Lindley on Mines, sec. 777 [subd. 4]; 1 Lindley on Mines, subd. 4, sec. 175 and cases cited; *Deffeback v. Hawkes*, 115 U. S. 392; *Davis v. Weibold*, 139 U. S. 509; *Doolan v. Carr*, 125 U. S. 618; *Larkin v. Dooly*, 58 Fed. 333; *Parleys Park S. M. Co. v. Kerr*, 130 U. S. 261; *Hardin v. Jordan*, 140 U. S. 371.)

## RESPONDENT'S POINTS.

The definite boundary lines of a United States government Indian reservation are established by survey under the direction of the Interior Department of the Government, and its action is conclusive and final and cannot be attacked collaterally.

Individuals have a right to rely upon a survey and acquire vested rights under it.

No subsequent corrective survey can affect a primary survey to the extent of interfering in any way with vested property rights acquired under the primary survey, no matter how inaccurate the primary survey may have been.

. The courts will protect the vested rights of individuals acquired under the primary survey. (R. S. of U. S., sec. 2396, sub. 2; *Cragin v. Powell*, 128 U. S. 566; Lindley on Mines, secs. 185-192, and cases cited; 27 Cyc. 546; *Re Fort Maginnis*, 1 L. D. 552; *Washington Rock Co. v. Young*, 29 Utah 108; *Noonan v. Caledonian G. M. Co.*, 121 U. S. 393; *Kendall v. San Juan S. M. Co.*, 144 U. S. 658; Snyder on Mines, sec. 179.)

## STRAUP, C. J.

This is an action in ejectment. The plaintiff alleged that he was the owner and entitled to the possession of certain mining claims known as the "Tykoon Consolidated Mining Claims," and designated as lots numbers 34 to 43, inclusive, situate in Wasatch County, this state, and that the defendant wrongfully took possession of them, and ejected the plaintiff therefrom. The defendant denied that his posses-

sion was wrongful. He alleged that when the plaintiff entered and located the claims in 1880, and when he obtained his patent for them from the government of the United States in 1891, they were within an Indian reservation, and were not subject to location or sale, and that the plaintiff's location and patent were therefore void; that in 1905 the unallotted lands of the reservation were restored to the public domain, and in 1907 the defendant located the ground as the Danville group of claims; and that he claimed possession of them by virtue of such location. The principal question presented involves the boundary line of the reservation. It is claimed by the plaintiff that the Tykoon claims which were located by him, and for which he obtained a patent, were without the reservation. The defendant claimed the contrary. Upon the evidence adduced by both parties the court found in favor of plaintiff, and adjudged that the plaintiff was the owner and entitled to the possession of the Tykoon claims, and that the defendant surrender possession of them to the plaintiff. From such judgment, the defendant has prosecuted this appeal.

The judgment is assailed principally upon the alleged ground that the evidence conclusively shows that the Tykoon claims were within the reservation. It is made to appear that in 1861 the Secretary of the Interior recommended that the President of the United States issue his proclamation ordering "that the entire valley of the Uintah River, within Utah Territory, extending on both sides of said river to the crest of the first range of contiguous mountains on each side, be reserved to the United States and set apart as an Indian reservation." The President thereupon in that year by proclamation, established the reservation as recommended by the Secretary. In 1884 an official survey, under the direction of the Interior Department, was made by Daniel C. Oakes and Myrum P. Bennett, Jr., United States surveyors, which is known as the "Oakes & Bennett Survey," and which was approved by the Department of the Interior as the boundary of the reservation. The maps of that survey were certified to as being conformable to the

field notes of the survey on file in the office of the Interior Department. The field notes and maps of that survey were put in evidence. According to that survey, the Tykoon claims were wholly outside and about three miles west of the reservation. In the year 1891 the government of the United States issued a patent to the plaintiff for the Tykoon claims. In 1902, by an Act of Congress, the unallotted lands in the reservation were ordered restored to the public domain on the 1st day of October 1903. That time was extended by acts of Congress until not later than the 1st day of September, 1905. In July, 1905, the President of the United States issued a proclamation restoring the unallotted lands of the reservation to the public domain, "excepting . . . such mineral lands as may have been disposed of under existing laws," and declared such unallotted lands open to entry, settlement, and disposition on and after the 28th day of August, 1905. In 1903 Arthur H. Brown, who "had a commission as agricultural surveyor," together with others, surveyed the south, southeast, and west boundaries of the reservation. According to that survey, which is known as the "Brown Survey," and which was also approved, the greater portion of the Tykoon claims were within the reservation. But when the plat of that survey which shows the patented claims to be within the reservation, was approved, "the area of those claims were" by the Interior Department "excluded from the public land and from being entriable." It is, however, urged by the appellant that, though the patented claims were excluded from the public domain, the department nevertheless could not lawfully so exclude them. It is not necessary to inquire into the questions whether such exclusion by the department was inconsistent with the proclamation of 1905, or whether the department had the authority to so exclude the claims from the rest of the unallotted lands restored to the public domain. There is evidence to show that the boundary line of the reservation was fixed and established by the official survey of 1884, which was approved by the Interior Department. The survey was an original or primary

survey. Vested property rights which were acquired under it cannot be interfered with by a subsequent corrective survey or a resurvey. (*Cragin v. Powell,* 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566, 5 Cyc. 914,)

This doctrine is not disputed by appellant. He, however, insists that the proclamation of 1861 itself fixed the boundary of the reservation by reference to a fixed monument, "the crest of the first range of contiguous mountains on each side," and that the evidence without dispute shows that the Tykoon claims are within the "crest of the first range of contiguous mountains," and as shown by the Brown survey. In the first place, we do not think by the use of the language contained in the proclamation of 1861 it was intended to fix an exact or definite boundary. In the next place, though all that is claimed for by appellant were conceded, it but argues that the original or primary survey is incorrect. It is not the question now whether the original survey or the Brown survey is the more accurate. It is not disputed that the survey of 1884 was an official and original survey made under the direction of, and approved by, the Interior Department, and that, according to that survey the Tykoon claims are more than three miles from the reservation. Whether that survey correctly established the boundary of the reservation with reference to the "crest of the first range of contiguous mountains," or whether it was inaccurate in other particulars, can make no difference, so far as affecting vested property rights which were acquired under it. As to all such rights that survey, right or wrong, became the boundary line of the reservation. Said Judge Cooley in a concurring opinion in the case of *Diehl v. Zanger,* 39 Mich. 601:

"Nothing is better understood than that few of our early plats will stand the test of careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and, if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed, the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity."

The fact, generally known and quite apparent in the records of courts, is that two consecutive surveys by different surveyors seldom, if ever, agree; and, the greater number of surveys, the greater number of differences and disagreements will occur. (*City of Racine v. Emerson,* 85 Wis. 80, 55 N. W. 177, 39 Am. St. Rep. 819.) This is especially true in this mountainous country where considerable difficulty is encountered in correctly running lines, and where the direction of lines and the location of points are, and sometimes can only be, estimated or calculated. In ascertaining and determining the crest of mountains as rugged and irregular as those in and about the reservation, it is not unlikely that two surveyors will disagree, and that a third may declare that both are wrong. We think that when the government of the United States, by an official and original survey, which was approved by it, fixed and established the boundaries of the reservation, and rights have been acquired under that survey, the lines of such survey, where they have been run and can be found, constitute the true boundary which cannot be departed from or made to yield to subsequent or resurveys which are in conflict with them. That the boundary of the reservation as found by the court is as is shown by the 1884 or original survey is not questioned; and as the plaintiff's claims, according to such boundary, are wholly without the reservation, we think the judgment of the court below ought to be affirmed, with costs.

Such is the order.

FRICK and McCARTY, JJ., concur.