WALTER L. GARDNER, APPELLANT, *v.* ARTHUR FORT AND IONE KATHERINE FORT, RESPONDENTS.

No. 3922

June 13, 1956.                                298 P.2d 468.

*George E. Marshall,* of Las Vegas, for Appellant.

*Rudiak & Lionel,* of Las Vegas, for Respondents.

# OPINION

By the Court, BADT, J.:

The only material question involved in this appeal is whether the evidence supports the court's finding as to the proper location of the north line of section 13, T. 21 S., R. 61 E., M.D.M., in Clark County, Nevada, and, more particularly, the location of the N¼ corner of said section approximately at the center of a straight line connecting the NW corner with the NE corner of said section. Our conclusion is that it does. Conversely stated, did the evidence justify the court's rejection of appellant's contention that a certain monument, consisting of an unmarked 4 x 4 post in a mound of rocks, set some distance from the quarter corner point described, was the actual original N¼ corner. We are satisfied that the court was justified by the evidence in rejecting such contention. Other points are determined in the following opinion.

We refer to the respondents Arthur Fort and Ione Katherine Fort as Fort and to appellant Walter L. Gardner as Gardner. Gardner and Fort's predecessor were adjoining owners of so-called five-acre tracts. Fort's predecessor, Humphrey, owned the tract to the

north and Gardner the tract to the south. Fort acquired from his predecessor, Humphrey, approximately the south 273 feet of Humphrey's five-acre parcel. The boundary line between Fort and Gardner is in dispute, Fort having sued Gardner to establish the line contended for by the former. The court so established it and Gardner has appealed.

The patent to Fort's predecessor Humphrey was for W½ NW¼ NE¼ NW¼, containing five acres according to the official plat of the Bureau of Land Management. Patent to Gardner was for W½ SW¼ NE¼ NW¼, containing five acres according to the official plat of the Bureau of Land Management. The original survey by the United States Land Office was in 1882 or 1886. This was followed by a survey of the General Land Office in 1942. The survey under which the plat was made by the Bureau of Land Management (which took over functions of this nature from the General Land Office) was made in 1952. From 1950 to 1952 F. M. Eaton, a duly registered civil engineer and land surveyor, apparently surveyed the N½ of section 13 for a number of people who desired to make entries upon five-acre tracts and he recorded such survey in 1954.[1] In making his survey for this purpose he found the NW corner of section 13 and the NE corner of section 13. The brass markers identifying these two corners had been placed there by the General Land Office in 1942 or 1943. In searching for the N¼ corner of the section, he found no such corner in place on the northerly section line of section 13, but did discover a 4 x 4 post in a mound of rocks 27.6 feet to the north and 20.6 feet to the east of the

[1]Section 2875.05e N.C.L., 1943–1949 Supp. (amendment Stats. 1953, 196, not affecting the situation), of the land surveyors' act, requires a surveyor within 90 days after the establishment of points or lines to file a record of his survey with the county recorder, showing material evidence not appearing on any prior recorded or filed map, any material discrepancy with any such prior record, evidence that might result in alternate positions of points or lines, the establishment of points not ascertainable from inspection of such map without trigonometric calculations, showing all monuments found, describing them etc., giving their bearings and other similar data.

approximate center of the north line of section 13. From inquiries made of a neighboring landowner and from the latter's report that the point of diversion in an application to the state engineer for permission to appropriate underground water had been tied in to this monument as the N¼ corner of section 13 (which he verified from the state engineer's published notice), he accepted it as such and designated it on his map as such. His entire survey was based upon the acceptance of this monument as the N¼ corner of said section. It had no markings on it, official or otherwise. The original plat of the government survey of 1882 or 1886, while designating the NW corner and the NE corner and describing the markings thereon, did not, so far as disclosed by the evidence, indicate that any monument had been placed for the N¼ corner.[2]

The survey made by the Bureau of Land Management in November, 1952 resulted in placing the N quarter corner of section 13 on the north boundary of that section, approximately halfway between the NW corner and the NE corner. A subsequent survey and grading work by the state department of highways in constructing a road along the north boundary of section 13 destroyed or covered the monument that Eaton had found. The patent issued to Humphrey in August, 1954 and the patent issued to Gardner in June, 1954, with respective descriptions as above set forth, were in accordance with the Bureau of Land Management survey. There was no evidence as to the respective dates of the entries (proper filings in the Bureau of Land Management and issue of certificates of entry and payment of fees) which resulted in the two respective patents.

Defendant asserts in his appeal (1) that the quarter corner found by Eaton is a monument and marker of the original survey; (2) that, if so, the survey by the

---

[2]No copy of the original government township plat was offered in evidence by either party. Much of the evidence with reference to it was by way of statement of recollection of the witnesses.

Bureau of Land Management in 1952 was a resurvey; and (3), being such, it could not affect the rights of entrymen that had attached. Sec. 772, Title 43, U.S.C.A., Barringer v. Davis, 141 Iowa 419, 120 N.W. 65.

There is no substantial factual support of these contentions.

Fort contends in addition that Gardner's present reliance upon the location of the monument found by his surveyor Eaton is a collateral attack upon the patent issued to Gardner as well as upon the patent issued to Humphrey, and that such collateral attack may not be made. Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566; Earl v. Morrison, 39 Nev. 120, 154 P. 75. This contention too we believe to be well founded.

Technically the judgment quieted plaintiffs' title in the metes and bounds description of the approximate south 273 feet of the five-acre tract patented to their predecessor as described in his patent, and ordered the defendant to remove a fence placed by the defendant on plaintiffs' said tract and enjoined defendant from trespassing on plaintiffs' tract. The findings are amply supported and the conclusions drawn are warranted by said findings.

The judgment is affirmed with costs.

MERRILL, C. J., and EATHER, J., concur.