ODOM, Justice.
 

 There are two questions involved in this suit. One — and this is the major point — is whether the State of Louisiana now owns certain lands in Township 15 South, Range 1 East, in Vermilion Parish. The other relates to'the correct location of School Section 16 in that township and the proper boundaries of that section and the proper location and boundaries of the lands owned by plaintiffs and other interested parties.
 

 Plaintiffs own lands in that township, as do' the School Board of Vermilion Parish and various individuals named as defendants. Confusion arose as to the correct location on the ground of School Section 16 and its boundaries, as well as to the boundaries of the tracts owned by the various corporations and individuals. The reason why the confusion arose will be stated later in this opinion. The plaintiffs brought the present suit in order to have the court definitely establish the location and the boundaries of the various tracts of land. The State was made a party defendant in order that it might assert whatever interest it might have in any of the lands in controversy. The plaintiffs and the defendants, except the State, claim to own all of the lands in this township. The State in answer set up claim to something more than 7000 acres of the land. As the plaintiffs and the defendants, other than the • State, claim to own all of the land and as the State in answer set up claim to a portion of it, there was issue joined between the State and other landowners as to whether the State in fact owns any of the land in that township. There is serious conflict as to ownership between the individuals and corporations claiming lands in that township, and the State. This makes it necessary to determine primarily whether the State owps the lands which it claims.
 

 The trial court rendered judgment rejecting the State’s claim to any of the lands in controversy, and fixed the location of School Section 16 and its boundaries as well as the boundaries of the lands owned in that township by other interested parties according to a survey and plat made by Walter Y. Kemper, civil engineer, and filed by plaintiffs as Exhibit “G”. The
 
 *967
 
 School Board of Vermilion Parish, the State of Louisiana, as well as various persons owning land in the township, were made defendants in the suit. The School Board and the defendant landowners have acquiesced in the judgment and ask that it be affirmed. The State alone appealed from the judgment.
 

 As we have stated, the major question presented by this appeal is whether the State owns certain lands in Township 15 South, Range 1 East. If, as the trial judge held, the State has no valid claim to any of the lands in controversy, then the other issues raised by the pleadings, which relate to the proper location on the ground of School Section 16 and its boundaries and the location on the ground and the boundaries of the various tracts owned by private individuals and corporations in that township, fieed not be discussed, because all interested parties except the State are satisfied with the judgment.
 

 According to surveys made by United States government surveyors, practically all the land in Townships 15 and 16 South, Range 1 East, Southwestern District of Louisiana, is low, marsh, swamp land. The first survey of lands made in this particular locality was by Rightor and McCollum, about the year 1837. They surveyed an area known as “Pecan Island”, but their survey was never approved. The same land was surveyed by Thomas Bilbo in 1845. He made a plat of his survey, which was approved. His plat shows that he surveyed Sections 31; 32, 33, 34, and 35, Township 15 South, Range 1 East, the lines of Section 36 to be protracted and the east and west lines of Section 28 partially protracted. His plat shows that the area known as Pecan Island is located in the northern portion of Township 16 and the southern portion of Township 15, including parts of Sections 31, 32, 33, 34, 35 and 36. His plat shows further that all these sections except Section 36 in Township 15 were reserved for naval purposes. Bilbo’s survey, as shown by his map or plat, included not only the extreme southern portion of Township 15 but also the extreme northern portion of Township 16.
 

 Another survey made of lands in that vicinity was that of John Rikowski, in 1856. His plat shows that he surveyed Sections 1, 2, 11, and 12, comprising a block of land two miles square in the northeast corner of Township 15, known as “Little Prairie”. His plat shows that all the lines around Sections 1, 2, 11, and 12 were run and that the lines between Sections 3 and 4 and between Sections 10 and 11 were established, as well as the lines between Sections 11 and 14 and Sections 12 and 13. His plat also shows Section 15 in place. So that, according to Rikowski’s plat, he made a rather complete survey of the lands in the extreme northeast portion of Township 15. His plat was approved in 1857.
 

 No further survey seems to have been made in that section of the State by government surveyors. So that we have before us two plats, one being Bilbo’s, showing a survey of part of the extreme northern portion of Township 16 and the ex
 
 *969
 
 treme southern portion of Township 15, and one by Rikowski, showing a survey of the extreme northeastern portion of Township 15.
 

 But these surveys were never connected. No survey of the land in Township 15 north of the north boundary line of Sections 31, 32, 33, 34, 35, and 36, and south of the south boundary of Rikowski’s survey was made until about the year 1928, or nearly 80 years later.
 

 The numerous plats filed show — and it is now admitted by counsel for the State and all others interested- — that, when Bilbo made his survey of the southern portion of Township 15 and the northern portion of Township 16 and located and established the line between those two townships, he by mistake located that line- approximately two miles south of where it should have been located. In other words, instead of locating that east and west line— the southern boundary line of Township 15 and the northern boundary line of Township 16 — six miles south of the northern boundary line of Township 15, as located by Rikowski, he located it approximately eight miles south. The result was that instead of Township 16 being six miles square, as it would have been if the line had been properly located, it was, according to the survey and plats, a parallelogram six miles east and west and four miles north and south; and Township 15 was six miles east and west by eight miles north and south.
 

 Bilbo’s mistake in locating the township line was not discovered until many years after the State had acquired and disposed of the swamp lands in those townships and the various individuals who now own lands in that vicinity had acquired their titles.
 

 There are in the record several so called “desk plats” of these two townships. These were made by persons who knew nothing of Bilbo’s mistake and who assumed that the respective townships were six miles square, according to approved methods of government surveying. Consequently, these desk plats show 36 sections one mile square, of 640 acres, in each of the townships; but, due to Bilbo’s mistake, if all the land in Township 15 is divided into 36 equal portions, or sections, each portion or section in that township would contain much more than 640 acres, and, if the land in Township 16 is divided into the same number of portions or secr tions, each section would contain much less than 640 acres.
 

 These surveys, maps and’ plats above referred to were all made by government surveyors prior to the date on which the State acquired title. These maps or plats were on record and were used by the State and the Washington Land Office in the selection and approval of the lands.
 

 The State selected lands in Townships 15 and 16 South, Range 1 East, under the Act of Congress dated March 2, 1849, known as the “Swamp Land Grant”, 9 Stat. 352. Its selection was approved May 5, 1852. As to the lands in Township 15, the government’s approval included:
 

 “The whole of this township (with the exception of Sections 31, 32, 33, 34 and 35, which have been reserved from sale by order of the President of the United
 
 *971
 
 States 'for naval purposes, see letter from Commissioner of the General Land Office, dated October 23, 1845, and also except Section 16 for schools) being Township 15 South, Range 1 East, estimated area 19,200 Acres. The character of this township is fresh water marsh and the portion reserved from sale is part of Pecan Island.”
 

 The description of the lands approved to the State in Township 16 is as follows:
 

 “All except Sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 14, which were reserved by the President of the United States for naval purposes, see letter of the Commissioner of the General Land Office, dated October 23, 1845, all this township not surveyed except the above named sections, and also excepting Section 16 for schools in Township 16 South, Range 1 East, estimated area 14,720 acres.”
 

 At the time this approval was made, it was not known that Bilbo had erred in locating the line between Townships 15 and 16. This is shown by the estimated acreage approved. All of Township 15 was approved to the State except six sections, Sections 31, 32, 33, 34, 35, and 36. Multiplying 640, the number of acres in a section according to approved rules for surveying, by 30, the number of sections approved to the State, we have 19,200 acres, the exact number of .acres which the certificate shows was approved to the State.
 

 All of Township 16 except 13 sections (or the remaining 23 sections) was approved to the State. Multiplying 640 by 23, we have 14,720, the number of acres which the certificate shows was approved to the State.
 

 The State therefore acquired by selection and approval 33,920 acres in Townships 15 and 16 South, Range 1 East.
 

 Following these approvals to it, the State did not have its lands in either of these townships surveyed, although, prior to May 26, 1883, it sold and patented to sundry individuals all of Sections 1, 2, 11, and 12, and Sections 3 and 10 in Township 15 South, Range 1 East. These are the sections surveyed, with the lines established or protracted, by Rikowski in 1856, as shown by his plat above referred to. The State did not acquire Sections 31, 32, 33, 34, and 35, which were reserved from sale by the government for naval purposes, as we have stated, nor did it acquire Section 16, except in its capacity as trustee for the schools. So that, after disposing of Sections 1, 2, 3, 10, 11, and 12, it owned in Township 15 only 24 sections, or 15,360 acres.
 

 It does not appear that the State disposed of any of its lands in Township 16 prior to May 26, 1883, and, as stated, it had acquired by grant, under the act of 1849, 14,720 acres in that township.
 

 On May 26, 1883, J. B. Watkins filed with the State an application to purchase all the unsurveyed lands in Township 15 South, Range 1 East “except Sections 31, 32, 33, 34 and 35 reserved”, and “All of Sections 12, 13, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 and 36, in T. 16 S. R. 1 E.”
 

 
 *973
 
 This application to purchase was made in accordance with the provisions of Act No. 75 of 1880. Section 1 of that act provided for the establishment of “an office for the sale of public lands donated to the State by Congress”. Section 2 authorized the governor to appoint a register to have charge of the affairs of the office, and Section 3 fixed his duties. It reads in part:
 

 “That it shall be the duty of the register to keep accounts of the sale of lands donated to the State, in well bound books, with the number of the certificate issued therefor, setting forth the section, parts of sections, township and range, district and parish, to whom and when sold, and for what price, and shall cause to be marked on the official plats or maps on file in' his office the number of certificate, which books and maps shall be preserved as official records.”
 

 Section 8 provides that persons holding legally issued outstanding unlocated State land warrants “shall have a right hereafter to locate said warrant on any lands belonging to the State”, Section 11 of the act reads, as follows:
 

 ■ “That the public lands donated by Congress to the State of Louisiana, designated as sea marsh or prairie, subject to tidal overflow, so as to render them unfit for settlement and cultivation, shall be subject to entry and sale at the rate of twelve and a half cents per acre; provided, that satisfactory proof of said fact be filed with the Register of the State Land Office.”
 

 It is conceded that the lands here involved were subject to entry and sale at the rate of 12%^'per acre.
 

 The record shows that Receiver’s Certificate No. 4483, covering lands in Township 15 South, Range 1 East, was issued to J. B. Watkins, for:
 

 “Whole of Sections 4, 5, 6, 7, 8, 9, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 36, T. 15 S., R. 1 E., S.W. District, containing 15,360 acres, at 12y2c per acre, S.M. or T.P.”
 

 The record shows further that the State issued and delivered to J. B. Watkins Patent No. 5193, the lands described therein being:
 

 “All of Sections 4, 5, 6, 7, 8, 9, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and Section No. 36, Township 15 S., Range No. 1 E. in the Southwestern Land District containing 15,360 acres, according to official plat of the survey of said lands in the State Land Office.”
 

 The record shows further that Certificate No. 4486 was issued to J. B. Watkins for lands in Township 16 South, Range 1 East, described as follows:
 

 “All of Secs. 12, 13, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 and Section No. 36, Township 16 S. Range No. 1 E, in the Southwestern Land District containing 14720 acres, according to the official plat of the survey of said lands in the State Land Office.”
 

 The record further shows that the State executed and issued to Watkins Patent No. 5196, conveying to him the same lands.
 

 
 *975
 
 We find in the record certified copies of two receipts issued to Jabez B. Watkins by C. A. Burke, State Treasurer, the first reading as follows:
 

 “Baton Rouge, May 26 1883
 

 "Received of Jabez B. Watkins Nineteen hundred & twenty Dollars for purchase of whole of Sec’s 4. 5. 6.
 
 7.
 
 8. 9. 13. 14. 15. 17. 18. 19. 20. 21. 22. 23. 24. 25. 26. 27. 28. 29. 30. and 36 T 15 S R 1 E SW. District containing 15,360/00 acres @ 12%^ per acre S.M. or T.P.
 

 “$1920/00 C. A. Burke
 

 “State Treasurer”
 

 The second receipt reads as follows:
 

 “Baton Rouge, May 26 1883
 

 “Received of Jabez B. Watkins Eighteen hundred •& forty/00 Dollars for purchase of whole of Sec’s 12. 13. 15. 17. 18. 19. 20. 21. 22. 23. 24. 25. 26. 27. 28. 29. 30. 31. 32. 33. 34. 35 & 36 T 16 S R 1 E S W District containing 14,720/00 acres @12%^ per acre S M or T P “$1840/00 C. A. Burke
 

 “State Treasurer”
 

 We find in the record also the two patents issued to Jabez B. Watkins by the governor, covering the 'lands in Townships 15 and 16 South, Range 1 East, and we note 'that the treasurer’s receipts and the patents are all dated May 26, 1883. From this we infer that the sale by the State to Watkins of the lands in these two townships constituted one single transaction. The receipts and the patents seem to have been issued simultaneously.
 

 The lands involved in this suit are in Township 15 South, Range 1 East. But 'the grant made to Watkins on May 26, 1883, was not limited to lands in that township alone. The grant included lands in -both Township 15 and Township 16. On May 26, 1883, Watkins paid to the State $1920 for lands in Township 15 and $1840 for lands in Township 16, or 12%ji per acre for 15,360 acres in Township 15 and 14,720 acres in Township -16, as shown by the receipts. In other words, he bought and paid for, on that date, 30,080 acres in the two townships at 12%^ per acre.
 

 But, due to Bilbo’s mistake in locating the line between Townships 15 and 16, there was an overplus of acreage in Township 15, and therefore more than 15,360 acres owned by the State on May 26, -1883, when it sold to Watkins; and counsel for the State argue that, in as much as the records show that Watkins paid for only 15,360 acres in that township, the State now owns the overplus, amounting to something like 7200 acres.
 

 In making this argument, counsel overlook some of the pertinent facts connected with the entire transaction. These are that, while it is true that the State did own in Township 15 more than 15,360 acres, it owned in Township 16 much less than 14,720 acres, the acreage which it sold to Watkins in that township and- for which he paid the State
 
 VZ1/^
 
 per acre, cash.
 

 Due to Bilbo’s mistake, Township 16-is only four miles from north to south instead of six miles and therefore comprises only two-thirds of the area of a regular township. It is short a strip off the north side, two miles wide by six miles long, or 12 square miles. This amounts in area to 12 sections, according
 
 *977
 
 to the rules of surveying, or 7680 acres. For the same reason that Township 16 is short 12 sections, or 7680 acres, Township 15 has an overplus of the same, or approximately the same, area and acreage. So that the overplus in Township 15 approximates the shortage in Township 16.
 

 The result is that, while Watkins paid for 14,720 acres in Township 16, he acquired in that township only about 7680 acres. In other words, he paid for something over .7000 acres in Township '16 which he did not get, and it is conceded that the State is not in position to make up-this shortage.
 

 The acreage actually received by Watkins in Township 16 is arrived at in this way: Bilbo’s plat shows that he surveyed and located on the ground Sections 1, 2, 3, 4, 5, 6, 7, 8’, 9, 10, 11, and 14, or 12 sections in that township. As shown by his plat, each of these surveyed sections is regular in size and contains 640 acres, or a total acreage of 7680. This was a government survey, and the plat which he made and filed is a government plat. It is conceded by all parties that neither the survey nor the plat can now be changed. The sections surveyed and platted must therefore stand and remain full sections.
 

 Now, deducting 7680, the acreage in these 12 surveyed sections, from 15,360 acres (two-thirds of a full township), the entire acreage in Township 16, we have left only 7680 acres, which is all the land the State ever owned in that township and all it' could convey to Watkins. The State did not acquire from the government the surveyed sections in this township.
 

 In oral argument before the court, counsel for the State conceded that the overplus acreage in Township 15 equals approximately the shortage in Township 16, and that the State in fact was paid by Watkins for the approximate number of acres which it owned in Townships 15 and 16, on May 26, 1883.
 

 According to the view which we take, the State made to Watkins one grant of land on May 26, 1883, and that grant included all the lands it then owned in these two townships. It cannot reasonably be said that there were two transactions, two grants. The fact that there was one certificate and one patent for the lands in Township 15, and another certificate and another patent for the lands in Township 16, is of no moment. It was all one transaction and covered, according to the certificates, 30,080 acres. Watkins paid for this number of acres. The net result is that the State has been paid for every acre of its land in those two townships.
 

 As to the State’s claim, we rest our opinion here. It has no just claim to any of the lands in Township 15. It is evident that neither the Register of the State Land Office nor the Surveyor General of the State had any knowledge of Bilbo’s mistake. They evidently assumed that these two townships were regular in size. This is shown by two plats, one of Township 15 and the other of Township 16, which, according to the certificate made by Lucille May Grace, present Register of the State Land Office, are “true and literal exemplifications of the records on file in this office”. These plats show that each of the sections contain 640 acres.
 
 *979
 
 When the lands were sold, the Register of the State Land Office wrote across the plat of Township IS: “All Sold within green lines Per Certificate No. 4483 N. S. D. J. B. Watkins.” The lands enclosed within green lines are all of the township except Sections 1, 2, 3, 10, 11, 12, 16, 31, 32, 33, 34, and 35. On the Land Office plat of Township 16, which shows the sections to be regular in size, the Register wrote: “All not Reserved Sold Per Certificate No. 4486 N-S-D — Jabez B. Watkins.”
 

 All the parties owning lands in Township IS except the School Board trace their titles by mesne conveyances back to J. B. Watkins. They employed Walter Y. Kemper, a civil engineer, to survey their lands, locate them on the ground, and fix their boundaries. His • survey, location, and boundaries are satisfactory to all of them, including the . School Board. There was judgment approving that survey and rejecting the State’s demands.
 

 For the reasons assigned, the judgment appealed from is affirmed.