ELLIS, Judge.
Plaintiffs, Union Producing Company, hereinafter referred to as Union, and Texas Gulf Producing Company, hereinafter referred to as Gulf, were the owners in equal indivisión of one certain gas, oil and mineral lease originally acquired by Union from the defendant, La-Terre Company, Inc., hereinafter referred to as La-Terre, covering 4,456.84 acres of land and included therein were certain lands situated in Terrebonne Parish, Louisiana described as follows:
Section Description Acreage
Township 20 South, Range 17 East
13 North 200 acres 200.00
Township 20 South, Range 18 East
110 North 400 acres 400.00
There is an admitted overlap of the boundaries of Township 20 South, Range 17 East and Township 20 South, Range 18 East and consequently an overlap of the boundaries of Section 13, Township 20 South, Range 17 East and Section 110, Township 20 South, Range 18 East, brought about by different locations of the range line between Ranges 18 and 17 East pursuant to a government survey by Foster and Walker, Surveyors, in 1831 and approved April 5, 1832, by the Surveyor-General of Township 20 South, Range 18 East and a resurvey or recheck of the Foster and Walker survey by Gorlinski in 1855, approved in 1856, wherein he moved the range line as established by Foster and Walker approximately 27 chains farther west, and a partial survey of Township 20 South, Range 17 East by G. F. Connelly in 1837, approved in May of 1842, wherein he placed the east boundary or range line of Township 20 South, Range 17 East some 3000 feet farther to the east than the Gor-linski and Foster and Walker surveys, measured from the location of the range line at the northwest corner of Township 20, South Range 18 East.[1]
*394 . At this stage, .we-hereby attach and make a part of this opinion Plat A as attached to the brief of plaintiffs which clearly shows the three different locations of the range line as'made by Foster and Walker, by G. F. Connelly of Township 20 South, Range 17 East and a resurvey of the Foster and Walker survey of Township 20 South, Range 18 East by Gorlinski.

*395 On March 30, 1960, Placid Oil Company, hereinafter referred to as Placid, acquired from La-Terre an oil and gas lease covering, among other lands, the following described land:

"Township 20 South, Range 17 East

Section 13, All except W/2 of SW/4, and also except the North 200 acres of said section which is presently covered by a mineral lease granted Union Producing Company, dated June 21, 1948, and recorded in Conveyance Book 164, Folio 251, Entry No. 76813, as supplemented by instrument of selection dated August 24, 1949, both of record in Terre-bonne Parish, Louisiana;

“Township 20 South, Range 18 East

Section 110, All, except the North 400 acres of said section which is presently covered by a mineral lease granted Union Producing Company, dated June 21, 1948, and recorded in Conveyance Book 164, Folio 251, Entry No. 76813, as supplemented by instrument of selection, dated August 24, 1949, both of record in Terrebonne Parish, Louisiana.”
Due to the overlap of Section 13, Township 20 South, Range 17 East and of Section 110, Township 20 South, Range 18 East, a dispute arose between the interested parties as to the ground location of the property in Terrebonne Parish leased by La-Terre to Union and described as the North 200 acres of Section 13, Township 20 South, Range 17 East and the North 400 acres of Section 110, Township 20 South, Range 18 East. Union and Gulf contend that, regardless of the overlap, it is entitled to 600 acres, either from the North of Sections 13 and 110 as a whole without regard to an overlap under the authority of holding of the Louisiana Supreme Court in Louisiana Furs, Inc. v. State, 191 La. 964, 186 So. 840,[2] decided in 1939, or 200 acres in the North of Section 13 and 400 acres, in the North of Section 110 after a determination by the Court of the common range line bewteen the two sections which of course would be the range line between Township 20 South, Range 17 East and Township 20 South, Range 18 East, where-' as Placid and La-Terre contend that no one has authority to change the range lines and that the North 200 acres of Section 13, Township 20 South, Ránge 17 East and the North 400 acres of Section 110, Township 20 South, Range 18 East must be located on the ground with full acceptance of the location of the range line between the two townships and sections in accordance' with the resurvey by Gorlinski and Con-nelly. In other words, it is their contention that location of the North 200 acres of Section 13, although it would overlap into the North 400 acres of Section 110 so that there would be 130 acres common to Sections 13 and 110 included in the description which of course would result in Union and Gulf receiving 130 acres less than the 600 acres called for by the description in their lease, must be made as if the overlap did not exist which would decrease plaintiffs-appellants’ acreage by approximately 130 acres. The main question which must be answered is the ground location of the south boundary of Union and Gulf which would be the north boundary of Placid under the terms of its lease from La-Terre.
Because of the difference between the parties as briefly outlined above, plaintiffs have proceeded under the authority of the Uniform Declaratory Judgments Act, LSA-R.S.» 13:4231-13:4246, and seek a judgment determinative of the ground location of the property hereinabove described as being covered in the lease from La-Terre to Union. After a trial on the merits which necessitated the introduction of the testimony of a number of witnesses and scores of exhibits, the District Court fixed the ground location of the North 200 *396 acres of Section 13, Township 20 South, Range 17 East and the North 400 acres of Section 110, Township 20 South, Range 18 East as contended by the defendants-appel-lees; Placid and La-Terre. The lower court recognized the east boundary of Township 20 South, Range 17 East as fixed by G. F. Connelly in 1837 and the west boundary of Township 20 South, Range 18 East as located by the resurvey of Gorlin-ski, approved in 1856, of the Foster and Walker survey made in 1831 and approved in 1832. Of course, each of these lines, i. e., the Connelly line which purportedly established the east boundary of Township 20 South, Range 17 East, would ordinarily be considered as also the west boundary of Township 20 South, Range 18 East. This purported range line by Connelly is located more than 3000 feet east of the line which Gorlinski established by his survey of the Foster and Walker survey as being the west' boundary of Township 20 South, Range 18 East and which would be ordinarily the east boundary of Township 20 South, Range 17 East. In other words, we have three different locations of the range lines which affected Section 13 and Section 110 and caused the lines of these sections to overlap with a common acreage of approximately ' 130 acres. For better understanding of the contention of defendants-appellees and the decision of the lower court which approved of their ground location of the North 200 acres of Section 13 and the North 400 acres of Section 110, we annex a copy of defendants’ Exhibit 61 as attached to their brief which is a map showing in part their contention and the holding of the court which accepts the range line as surveyed by Connelly as being the east boundary of Section 13, Township 20 South, Range 17 East and the range line established by the resurvey made by Gor-linski as being the west boundary of Section 110 Township 20 South, Range 18 East. Plaintiffs have appealed from this judgment.

*397

A more detailed discussion of the facts is necessary to a decision in this case. On June 21, 1948, La-Terre, as lessor, granted to Union, as lessee, an oil, gas and mineral lease covering and affecting approximately 18,056 acres of land situated in Terrebonne *398 and in Lafourche Parishes, Louisiana. The lands situated in Terrebonne Parish, Louisiana, involved in this suit were described in said lease as follows:
“Section Description Acreage

Township 20 South, Range 17 East
13 All except Wy2 of SW¡4 560.00
^ ‡ ^
Township 20 South, Range 18 East
110 All 612.84”
On January 4, 1949, recorded on January 31, 1949, in the conveyance records of Terrebonne Parish, Louisiana, it was agreed by and between La-Terre and Union that Paragraph 4 of the La-Terre— Union lease be amended so as to extend for a period of ten weeks from and after June 21, 1949 or until August 30, 1949, the time within which Union had to elect whether it would make a selection or selections of lands to be retained under the original lease (18,056 acres), or whether it would surrender all rights to said lease. It further provided that if it selected lands in accordance with such provision it was to pay $10.00 per acre as a consideration for the leasing of such selected lands.
Accordingly, by instrument dated August 24, 1949, recorded on September 9, 1949, in the conveyance records of Terrebonne Parish, Louisiana, executed by and between La-Terre and Union, the latter selected 4,456.84 acres of certain lands situated in Terrebonne Parish, Louisiana, for which it paid $10.00 per acre, or $44,568.40, as per agreement, and included in this selected acreage was the following: In Township 20 South, Range 17 East, Section 13, North 200 acres, containing 200 acres, and in Township 20 South, Range 18 East, Section 110, North 400 acres, containing 400 acres.
Neither Union nor La-Terre, nor anyone on their behalf, had actually surveyed, run or marked on the ground any of the boundaries of the governmental subdivisions referred to in the selection instrument at the time the lease and selection instrument were executed on August 29, 1949. However, on this date, according to Article 10 of a stipulation entered into by and between Union, Gulf, Placid and La-Terre (Exhibit P-1 Vol. 3), both Union and Placid had in their possession a copy of a plat or map prepared by “Edgar Tobin Aerial Surveys” in the year 1938, which each had purchased from the latter, and this aerial survey showed the overlap between the Gorlinski resurvey of the Foster and Walker line and the Connelly line. It does not show the four degree line as established by Foster and Walker in 1831, approved in 1832. This aerial map by Edgar Tobin Aerial Surveys is marked as Exhibit E in Vol. 4 of the transcript.
For accuracy as to the contents of Article 10 of the stipulation, P — 1, in Vol. 3 above referred to, we quote:
“10
“It is agreed that-the exhibit which is attached hereto and marked ‘Exhibit E’, is a true and correct copy of a plat or map prepared by Edgar Tobin Aerial Surveys in the year 1938, and that Union Producing Company and Placid Oil Company bought from Edgar Tobin Aerial Surveys and, therefore, owned and had in their possession a copy of said plat or map prior to the year 1948.”
*399 At this point we will consider the contention of Placid — La-Terre that Union at the date of its selection had full knowledge of the overlap as they had a Tobin Aerial Map which showed this overlap, and therefore they knew or are charged with knowledge that the land described in Sections 13 and 110 did not contain 600 acres and they did not intend to select 600 acres.
Mr. W. H. Spears, Executive Vice President of Union, testified that the selection made was not in any wise based upon the Tobin Aerial Survey map but was based upon a geophysical survey by Union to determine what area and to what extent they wished to select land in Sections 13 and 110 which resulted in the selection of 600 acres in the two sections being the North 200 acres of Section 13, Township 20 South, Range 17 East and the North 400 acres of Section 110, Township 20 South, Range 18 East. We fail to see any substantial advantage to be gained by any one of these parties in this suit from the fact that Union and Placid both had a copy of the 1938 Tobin aerial map which showed generally an overlap but was limited in its accuracy in that it did not show the line as surveyed by Foster and Walker in 1831. The record reveals that Union, Placid and La-Terre on the date which La-Terre executed the lease to Placid, March 30, 1960, had full knowledge of the overlapping situation for in 1959 Placid had caused a survey to be made of Township 20 South, Range 17 East and Township 20 South, Range 18 East and specifically of Section 13 of Township 20 South, Range 17 East and of Section 110 of Township 20 South, Range 18 East. Additionally, Placid had its surveyors attempt to locate the North 200 acres of Section 13 and the North 400 acres of Section 110 “according to sound surveying principles so as to establish the north line of this proposed lease.” See Placid and La-Terre brief, pages 4 and 5. The record reveals, and it is admitted in Union — Gulf’s brief, that just prior to the acquisition by Placid of its lease in March 1960 the former had made a survey on the ground of Sections 13 and 110 and: “ * * * for the first time learned for a fact that the governmental survey of Section 13 and two governmentál surveys of Section 110 did not conform and harmonize but actually overlapped each other by a distance of approximately 3000 feet

We do not believe from the record that any party to this suit can gain any advantage or estoppel from the fact that they had in their possession the Tobin map of 1938. On the one hand, there is no doubt that Union in making its selection was looking for minerals and not additional acreage and therefore depended upon a geophysical survey, and, on the other hand, Placid placed no dependence in the Tobin aerial survey for prior to the date that it took its lease from La-Terre it had a complete survey made of the entire area and was fully aware of the entire situation in regard to the overlap and evidently decided to take its chance in a lawsuit if it came to that stage. As a matter of fact, La-Terre is in no better position along this line than the other parties to the suit for they prepared the original lease given by it to Union in which they described Section 13, Township 20 South, Range 17 East as containing 560 acres, which is less the WJ4 of the SWj4 and as shown on the government approval of this section to the State, and also described Section 110, Township 20 South, Range 18 East as containing 612.84 acres and it was upon this acreage that Union subsequently made its selection in accordance with the amendment of its prior lease and subsequent to its geophysical survey.
Union made an offer to La-Terre for a lease of additional acreage which it subsequently leased to Placid. As its offer was not as advantageous to La-Terre as Placid’s, the latter secured the lease. Prior to the final completion of the lease to Placid, La-Terre, being fully aware of the overlap and not really knowing where the southern boundary of Union’s lease might be placed, considered the matter thoroughly before deciding upon the description to be *400 placed in Placid’s lease. This is shown by some 29 exhibits in the record which is correspondence between the officers, attorneys and employees of La-Terre, and is included in Exhibits P-11 — P-38. This latter offering was a letter written by Mr. J. B. Miller, attorney for La-Terre, to Mr. Earle L. Peters outlining the description to be placed in the Placid lease from La-Terre and we quote:
“March 9, 1960
File 28S02
“Mr. Earle L. Peters 633 National Bank Building Toledo, Ohio
“Dear Mr Peters:
“Upon receipt of your letter of March 2, 1960, I telephoned O. R. Carter, as a result of which he wrote you the March 4th letter, a copy of which was sent me.
“I have discussed with both Bob and Marshall the matter of a description for any lease which you might grant in , the Lapeyrouse-Dulac Area in T20S, Rs.l7&18E, and we all agree that the description should be by governmental subdivisions as now appears in your printed list of lands, even though some of the sections may overlap each other. In doing so, however, it is necessary to except such portions of this area as are presently covered by the lease to Union Producing Company, and it is also well to bear in mind that the acreage appearing on your printed list does not represent the true acreage. Assuming that you will lease all of the area which is not presently covered by the Union lease, the following description could be utilized:
Township 20 South, Range 17 East
Section 13, All, except W/2 of SW/4, and except those portions presently covered by the lease granted to Union Producing Company dated June 21, 1948, and recorded in Conveyance Book 164, Folio 2S1, Entry No. 76813, Terrebonne Parish, Louisiana;
Section 24, NE/4;
Township 20 South, Range 18 East
Section 110, All, except those portions presently covered by the lease granted to Union Producing Company dated June 21, 1948, and recorded in Conveyance Book 164, Folio-251, Entry No. 76813, Terrebonne Parish, Louisiana;
Section 112, Lots 3 and 4; E/2 of SW/4; NW/4 of SW/4; NW/4;
Section 113, NE/4 of NW/4.
“I have checked with Marshall Vignes, and he advises me that the total acreage comprised within the above description equals 725.89 acres, which includes 597.19 acres of land as to which. La-Terre apparently has a clear title, plus 128.70 acres which appear to be in conflict with the titles of others. I do not feel, however, that it would be wise to set forth any acreage figures in any lease which you might grant covering this property, but simply call this to your attention for purposes of negotiation.
“I also call your attention to the fact that the 128.70 acres mentioned as being in conflict are located in Sections 112 and 113 of T20S, RISE, and are in conflict with lands owned by other parties in Section 24, T20S, R17E. For this reason, I do not believe it would be *401 desirable to warrant title to these lands in any lease.
Yours sincerely, s/ J. B. Miller J. B. Miller”
Accordingly, on March 30, 1960, La-Terre executed the lease to Placid, covering among other lands, the following property pertinent to this suit described as follows:
“Township 20 South, Range 17 East
Section 13, All, except W/2 of SW/4, and also except the North 200 acres of said section which is presently covered by a mineral lease granted Union Producing Company, dated June 21, 1948, and recorded in Conveyance Book 164, Folio 251, Entry No. 76813, as supplemented by instrument of selection dated August 24, 1949, both of record in Terre-bonne Parish, Louisiana;
* * *
“Township 20 South, Range 18 East
Section 110, All, except the North 400 acres of said section which is presently covered by a mineral lease granted Union Producing Company, dated June 21, 1948, and recorded in Conveyance Book 164, Folio 251, Entry No. 76813, as supplemented by instrument of selection, dated August 24, 1949, both of record in Terrebonne Parish, Louisiana.”
From the above and foregoing description it is self-evident that the south boundary of Union’s lease, which would be the north boundary of Placid’s lease from La-Terre is completely dependent upon the location of the North 200 acres of Section 13, Township 20 South, Range 17 East and the North 400 acres of Section 110, Township 20 South, Range 18 East. It is also evident that the parties could not agree as to location of this line and hence this suit.
There is also in the record (Exhibit P-44) a letter from Union — Gulf to Placid after the latter had taken out a permit to drill its first well under the above lease from La-Terre which put Placid on notice that if the well denoted as B-l on the map was found to be on land covered by Union —Gulf’s lease the latter would assert all their legal rights. Placid completed wells B-l and B-3 in Section 110 and also drilled a well B-2 in Section 13 and all were producers.
We deem it advisable to state the basic arguments made by defendants-appel-lees in their brief which must be considered in arriving at a decision herein. In their brief, defendants-appellees state under the head or argument “For example, it is axiomatic that a description from which a surveyor can locate the land and by means of which he is able to establish the boundaries of the land on the ground is sufficient to identify the property. 26 C.J.S. p. 643, Deeds, § 30; Canterberry v. Slade Brothers, 232 La. 1081, 96 So.2d 4 (1957); Dinwiddie v. Cox, 9 So.2d 68 (La.App.2nd Cir.1942) (cert. den.).”
In answer to the above statement, we have no quarrel with the general statement or the law cited. However, the problem which presents itself is brought about by three government surveys which have produced a large overlap in Township 20 South, Ranges 18 and 17 East and many conflicting titles. In the case under consideration, the description is perfectly understandable, nothing ambiguous per se, it is couched in simple language and is not a weak description but a strong one and there woidd be no problem whatsoever for a surveyor to locate the land therein described on the ground if Section 13, Township 20 South, Range 17 East and Section 110, Township 20 South, Range 18 East had no overlap lines, but one range line which served as a common boundary between them. We do not deem this a surveying problem until the courts locate the proper boundaries of these two sections and then it will be a simple matter for a competent surveyor to survey the North 200 acres of *402 Section 13 and the North 400 acres of Section 110. As this record reveals, there are many conflicting titles due to this overlap that will most probably be vitally affected by the decision in this case. La-Terre has other conflicting titles as shown by this record.
Defendants-appellees next make the argument that :
“And it is the settled jurisprudence of Louisiana that a sale by given bounds conveys only the property within such bounds, and that acreage designations appended to such specific descriptions do not enlarge the grant described by the specific bounds. Blevins v. Manufacturers’ Record Publishing Company, 235 La. 708, 105 So.2d 392 (1958); Motichek v. Perriloux, 231 La. 849, 93 So.2d 190 (1957); City of New Orleans v. [Joseph] Rathborne [Land Co.], 209 La. 93, 24 So.2d 275 (1945); W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184 (1942); Bender v. Chew, 129 La. 849, 56 So. 1023 (1912).”
The above is a sound argument and supported by the authorities cited. However, the question which must be first settled is the legal bounds of the two sections involved here because of the overlapping surveys. Once the boundaries of Section 13, Township 20 South, Range 17 East and Section 110, Township 20 South, Range 18 East are legally fixed it will be a simple matter to locate the property as described. However, we do not believe the above jurisprudence is apposite to the problem as we are concerned with a definite description “the North 200 acres and the North 400 acres.” The acreage cannot be ignored.
We will now consider the main defense set forth in the defendants-appellees’ answer to the plaintiffs-appellants’ suit and which was accepted by the lower court as one of the main reasons for his judgment herein, “ * * * that the south line of Union’s lease as fixed by the selection instrument should be determined in accordance with sound surveying principles, (1) by locating Section 13, Township 20 South, Range 17 East on the ground in accordance with the official survey of that township, and then by drawing a line at a sufficient distance south of the north line of Sections 13 so as to include 200 acres; and (2) by locating Section 110,- Township 20 South, Range 18 East on the ground in accordance with the official survey of that township and then by drawing a line at a sufficient distance south of the north line of Section 110 so as to include 400 acres.” See plat supra, which is a copy of Defendants’ Exhibit 61 and is attached to their brief in order to identify the acreage selected by Union in accordance with “sound surveying principles” and which plat is attached to, the judgment of the lower court as full identification of its location of plaintiffs-appellants’ land as described in the lease from La-Terre based upon Union’s selection.
We see no necessity for going into detail with regard to the testimony of the surveyors on this point for they positively testified that if they were called upon to locate the property in question as described in the lease from La-Terre to Union, i. e., the North 200 acres of Section 13, Township 20 South, Range 17 East on the ground and the North 400 acres of Section 110 Township 20 South, Range 18 East, they would proceed exactly as contended by defendants-appellees. In other words, they would accept the boundaries of Sections 13 and 110 as surveyed and approved by government surveyors which would include the acceptance of the overlapping surveys of Sections 13 and 110 and would be placing the same land within the overlap in both Section 13 and Section 110. This, of course, would not settle any conflicting titles in the overlap and would not settle in any manner the conflict now before the court. We are in accord with the surveyors’ method of locating the property as they are not vested with any judicial powers or authority. We arc not confronted *403 with a surveying problem but a judicial one. Nothing is accomplished which would result in an answer to the question posed in this case by accepting Section 13 and Section 110 as containing acreage common to both but treating the common acreage as if it were only contained in one of the sections when it was surveyed and then the other when it was surveyed.
Clifford Smith, licensed Louisiana Civil Engineer who testified on behalf of Union-Gulf as an expert, was in accord with the other surveyors that if called upon to survey or locate the North 200 acres and the North 400 acres involved in this lawsuit he would have to do it by accepting the various government surveys and termed the so-called overlapping as one of surveys but not of land. His testimony clearly states the position that his deceased father, who was also a licensed Louisiana survey- or, had taken prior to his death and which he fully believed, and we quote:
“Q. Can you actually determine on the ground what constitutes Section 13 until the court determines the correct East boundary of Section 13?
A. Well, no, you can’t determine the location of Section 13 without considering the overlap unless the Court determines which survey controls which would eliminate the overlap.
Q. Insofar as the property out there on the ground is concerned would you say that the orange line which you marked as the North 200 acres of Section 13 is theoretical or actual?
A. I would say its theoretical. Let me borrow the map and this pencil. Suppose I was standing out on this peninsula right here.
Q. Mark it for identification.
A. Lets call it 6-X that I show on this map, and you ask me what section I was in. I would say that according to the Connelly survey of Township 20 South, Range 17 East I am in Section 13, and according to the Gorlinski survey of Township 20 South, Range 18 East I am in Section 110. Really and truthfully I don’t know which section I’m in. I feel and my father felt that that was not for us to decide, that the fact that the overlap existed we could show. Which survey controlled in there we don’t know. We feel that’s for the Courts to decide.”
Again we find this witness under cross examination testifying as follows:
“Q. In the description such as the ones with which we have been dealing here, that is, the North 200 acres of a section or North 400 acres of a section, this rule relative to acreage being the weakest guide or standard would not apply, would it?
A. Well, the point that comes to my mind when they are talking about the North 200 acres or North 400 acres of a particular section is what survey of this particular section are they referring to. That’s the point, the-the question that comes to my mind.”
Again this witness gave the following testimony:
“Q. Haven’t you testified that the Gorlinski location of the western boundary of Township 20 South, Range 18 East is the accepted location of that boundary ?
A. No, sir. I don’t think there is an accepted location of that boundary. I think that’s generally what we are here in court today about.”
We have no hesitancy in stating that we are thoroughly in accord with the conclusion of Mr. Smith in the testimony quoted above that it is the province of the court and not of the surveyors to decide what shall be the eastern boundary of Township 20 South, Range 17 East and the western boundary of Township 20 South, Range 18 East, which shall be a common *404 boundary to both ranges of Township 20 involved herein.
Counsel for defendants-appellees contend that the court has no jurisdiction to recognize a common range line as a boundary between Section 13, Township 20 South, Range 17 East and Section 110, Township 20 South, Range 18 East for it would in effect be changing the surveys of the public lands as made by Foster and Walker, Connelly or Gorlinski. In their brief counsel state:
“Under the express ruling of the United States Supreme Court in Cragin v. Powell, supra, and the numerous pronouncements of the Louisiana Supreme Court in Leader Realty Company v. Lakeview Land Company, supra, and State v. Aucoin, supra,[3] the Courts are without jurisdiction to change surveys of the public lands. The surveys therefore cannot be changed so as to conform to plaintiffs’ ‘interpretations’.”
. The above is the same thing as saying that the courts cannot pass upon conflicts in titles which arose as a result of three different government approved surveys setting three different range lines in three different locations so that the boundaries of the townships and many sections within the different range lines overlapped, and admittedly many other conflicts besides the case under consideration. There is no question but that law as stated in Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566, is well settled that:
“In 1848, the surveyor-general of Louisiana urgently recommended a resurvey of certain townships in the district of Louisiana, and of all lands fronting on Bayou Cailliou, in Terre Bonne, which had been surveyed by F. G. Connelly and other named surveyors. It was in accordance with this recommendation that Gorlinski made the resurveys above referred to. But the Commissioner of the general land-office very soon put an end to this system of resurveys, and in a letter to the surveyor-general, which throws no little light upon the subject, he says:
“ ‘The making of resurveys or corrective surveys of townships once proclaimed for sale is always at the hazard of interfering with private rights, and thereby introducing new complications. A resurvey, properly considered, is but a retracing, with a view to determine and establish lines and boundaries of an original survey * * * but the principle of retracing has been frequently departed from, where a resurvey (so called) has been made and new lines and boundaries have often been introduced, mischievously conflicting with the old, and thereby affecting the areas of tracts which the United States had previously sold and otherwise disposed of.’
“It will be perceived that McLeran’s survey not only disregards the old, original survey, making new lines and boundaries, but does so in contravention of the order from the land-office that those resurveys should not be extended into this township.
“That the power to make and correct surveys of the public lands belongs to the political department of the government, and that, whilst the lands are subject to the supervision of the general-land office, the decisions of that bureau in all such cases, like that of other special tribunals upon matters within their exclusive jurisdiction, are unassailable by the courts, except by a direct proceeding, and that the latter have no concurrent or original power *405 to make similar corrections, if not an elementary principle of our land law, is settled by such a mass of decisions of this court that its mere statement is sufficient. Steel v. St. Louis Smelting & Ref. Co., 106 U.S. 447, 454-455, [1 S.Ct. 389] (27 L.Ed. 226, 229) and cases cited in that opinion; U. S. v. San Jacinto Tin Co., 10 Sawy. 643, [23 F. 279,] affirmed in 125 U.S. 273, [8 S.Ct. 850] (31 L.Ed. 747); U. S. v. Flint, 4 Sawy. 61, affirmed in U. S. v. Throckmorton, 98 U.S. 61 (25 L.Ed. 93); Henshaw v. Bissell, 85 U.S. 18 Wall. 255 (21 L.Ed. 835); Stanford v. Taylor, 59 U.S. 18 How. 409 (15 L.Ed. 453); Haydel v. Dufresne, 58 U.S. 17 How. 23 (15 L.Ed. 115); West v. Cochran, 58 U.S. 17 How. 403 (15 L.Ed. 110); Jackson v. Clark, 26 U.S. 1 Pet. 628 (7 L.Ed. 290); Niswanger v. Saunders, 68 U.S. 1 Wall 424 (17 L.Ed. 599); Snyder v. Sickles, 98 U.S. 203 (25 L.Ed. 97); Frasher v. O’Connor, 115 U.S. 102. [5 S.Ct. 1141] (29 L.Ed. 311); Gazzam v. Phillips, 61 U.S. 20 How. 372 (15 L.Ed. 958); Pollard v. Dwight, 8 U.S. 4 Cranch, 421 (2 L.Ed. 666); Taylor v. Brown, 9 U.S. 5 Cranch, 234 (3 L.Ed. 88); McIver v. Walker, 13 U.S. 9 Cranch, 177 (3 L.Ed. 694); Craig v. Radford, 16 U.S. 3 Wheat. 594 (4 L.Ed. 467); and Ellicott v. Pearl, 35 U.S. 10 Pet. 412 (9 L.Ed. 475).
“The reason of this rule, as stated by Justice Catron in the case of Haydel v. Dufresne, is ‘that great confusion and litigation would ensue if the judicial tribunals were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done and divisions more equitably made than the department of public lands could do.’ ”
However, the court recognized the limitations of the above in the next paragraph as follows:
“It is conceded that this power of supervision and correction by the commissioner of the general land-office is subject to necessary and decided limitations. Nor is it denied that, when the land department has once made and approved a governmental survey of public lands (the plats, maps, field-notes and certificates all having been filed in the proper office), and has sold or disposed of such lands, the courts have power to protect the private rights of a party who has purchased in good faith from the government against the interferences or appropriations of corrective resurveys made by that department subsequently to such disposition or sale. But there is nothing in the circumstances of this case which brings it within any such limitations.”
In addition to the above settled jurisprudence we find the following quoted law and jurisprudence germane to a decision in this case. In Vol. 73 C.J.S., under the heading of Public Lands § 35, page 684, the following:
“§ 35. Conflicting Surveys

“The survey last accepted by the government before parting vuith title is the controlling survey.

“The survey last accepted by the government before parting with title is the controlling survey,41 and even though it is incorrect it will prevail over subsequent surveys.43 Under this rule, an accepted survey covering land in a particular township has been regarded as controlling as to lands in such township as against a subsequent conflicting survey which purports to cover land in another township.43 Where surveys of two grants overlap, the one first made has priority, particularly where the second is bounded with express reference to the first.44”
*406 In 11 C.J.S. under the heading of Boundaries at page 728 we find the following:
“§ 118.- — Questions of Law and Fad

What are boundaries is a question of law and where they are is a question of fad. Confliding evidence is for the jury, or for the trial court when sitting without a fury.

What are boundaries is a matter of law for the court;96 where they are, a matter of fact for the determination of the jury, under proper instructions from the court,97 unless the facts are admitted, or not in dispute, and the only question involved is the correct application of well known principles of law to the facts, in which event the question of location of boundary is for the court.98”
Again in 11 C.J.S. Boundaries, page 63S, § 61, under b. Resurveys we find the following statement of the law:
"Where patent has been issued. In ascertaining the boundaries of land on which a patent has been issued, the date of entry determines whether the original survey or a resurvey controls.49
“49. Idaho. — Wing v. Wallace, 246 P. 8, 9, 42 Idaho 430. “ ‘The patent when issued relates back to the date of entry, and the date of entry thus controls.’ — Wing v. Wallace, supra.”
In 73 C.J.S. Public Lands, page 685, we find the following:
“§ 36. Entry in General.
“An entry, in the technical sense, is that act by which an individual acquires an inceptive right to a portion of the • unappropriated soil of the country by filing his claim. The rights of one claiming public land must be determined by the validity of the original entry at the time it was made.”
Again in 73 C.J.S. under the heading of Public Lands we find the following:
“ § 33. Corrections of Surveys and Plats; Resurveys

“Until some rights to a specific tract of land have been acquired under a survey, a corrected survey or resurvey can be made and substituted therefor.

“Until some rights to a specific tract of land have been acquired under a survey, a corrected survey or resurvey can be made and substituted therefor,26 and the government may make as many surveys as may be desired.26 Rights which have been acquired under a government survey cannot be affected or interfered with by a subsequent survey 27 or by a subsequent correction of a plat.28 After the government conveys lands it has no jurisdiction to inter-meddle with them in the form of a second survey,29 and, accordingly, a resurvey by the government after the issuance of a patent does not affect the rights of a patentee.30”
It is well settled law and counsel for plaintiffs and defendants agree that an approved survey of public lands does not merely ascertain boundaries, it creates them. A township survey completed and approved creates the boundaries of the township and the sections therein. Cox v. Hart, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332 (1922); Sawyer v. Gray, 205 F. 160 (D.C.1913), affirmed 213 F. 1022 (9th Cir.1914); rev’d on other grounds 237 U.S. 674, 35 S.Ct. 842, 59 L.Ed. 1170 (1915); Robinson v. Forrest, 29 Cal. 317.
Union has a lease covering certain lands in Sections 13 and 110 and Placid has a lease covering lands in Sections 13 and 110 but completely dependent upon the south boundary of Union’s lease. A decision must be reached which fixes the location of the east boundary, or range line, of Township 20 South, Range 17 East and of Township 20 South, Range 18 East, this range line to be the common boundary between these two ranges in Township 20. It is *407 only then that the land leased to Union can be definitely located, thus establishing its south boundary which in turn will identify and locate on the ground the lands leased to Placid. We now proceed to the facts that we believe necessary to accomplish such a result.
In 1831 Foster and Walker made a survey under contract with the government of Township 20 South, Range 18 East and placed the range line as shown on plat A, which range line varied four degrees rather than being run north and south. This survey by Foster and Walker was approved ini 1832. Under the agreed law, some of which is cited, supra, when the Foster and Walker survey was approved it created Township 20 South, Range 18 East and fixed the western boundary of the township which became the established range line which could only be changed under certain conditions such as a resurvey prior to the acquisition of rights by third parties in and to Township 20 South, Range 18 East as established by the Foster and Walker survey. It is admitted that land was acquired by patent by third parties from the government under the Foster and Walker survey of Township 20 South, Range 18 East. As a matter of fact, introduced into this record as P-38, Volume 4, is a report of survey of La-Terre Company, Inc. boundaries in T 19 S, R 17 E, T 20 S, R 17 E and T 20 S, R 18 E, Terrebonne Parish, Louisiana. In other words, it is a report of a survey made on behalf of La-Terre setting its boundaries in Township 19 South, Range 17 East, Township 20 South, Range 17 East and Township 20 South, Range 18 East. We find a paragraph on page 2 of the report as follows:
“La-Terre’s title in T 20 S, R 18 E are based on the Gorlinski survey. In this area only Lot No. 1 of Section 112 was patented under the Foster & Walker survey, La-Terre having a common ■boundary with the North line of said Lot No. 1. There is every indication that the said north line of Lot No. 1 would be the same for either survey.”
Again' on page -3 of this report we find the following:
“Title to some of the Western portion of Lots 1 & 2, Section 112, T 20 S, R 18 E are still in the sovereign, the Eastern portions of these lots having been patented by the United States as Lot 1 of said section under the Foster & Walker survey. Parts of the SE14 of Section 13 and the NEJ4 of Section 24, T 20 S, R 17 E owned by La-Terre overlap said Western portion of Lots 1 and 2.”
Connelly received a contract in October, 1837, from the Surveyor-General to survey all townships south of Township 18 and between Ranges 16 and 28 East zvhich had not theretofore been surveyed. Thus, Township 20 South, Range 18 East, previously surveyed in 1831 by Foster and Walker, was specifically excluded from the contract and Connelly had' no authority to re-establish the west boundary or range line of Township 20 South, Range 18 East which in effect precluded the establishment of any other range line. The Foster and Walker range line is the east boundary of Township 20 South, Range 17 East. Exhibit A-S is a plat 'of Township 20 South, Range 17 East and we find thereon the following:
“The East Boundary was Surveyed by A. H. Foster and I. N. Walker Deputy Surveyor’s in the Winter of 1831. “The North Boundary was surveyed by John Maxwell Deputy Surveyor in the Winter of 1831.
“The South and West Boundaries, Section Lines and Traverse were Surveyed by G. F. Connelly Deputy Surveyor in the 4th quarter of 1837 under Contract of 13th of October 1837 and paid for in the first quarter of 1838. Amounting to 92 miles 68 chains and IS Links.”
Additionally we find in the record a written statement which is the result of an examination of all official documents connected with, and survey of, Township 20, Ranges 17 and 18 East, Southeastern Land *408 District of Louisiana, West of the Mississippi River, made by C. E. Bridges, duly qualified and sworn as Civil Engineer and Land Surveyor, acting under instructions from Mr. Arthur A. Lancaster of Placid Oil Company. We find the following written statement by this Engineer:
“From these official documents it was found that John Maxwell originally surveyed all of Township 19 South, Range 17 E in the winter of 1830 and 1831, as represented by his approved plat dated June 4, 1832. All of Township 20 South, Range 18 East was originally surveyed by A. H. Foster and I. N. Walker in the winter of 1831, as represented by their approved plat dated April S, 1832. All of Township 20 South, Range 17 East was originally surveyed by G. F. Connelly in the 4th quarter of 1837 under contract of October 13, 1837, as represented by his plat approved May 19, 1842, with the exception of the north boundary which was previously surveyed by John Maxwell in the winter of 1830 and 1831, and the east boundary which was previously surveyed by A. H. Foster and I. N. Walker in the winter of 1831.” (Emphasis supplied.)
Connelly’s field notes state that he did not find the southeast corner which had “heretofore been set”. He was clearly referring to the southeast corner of the township which had been previously set by Foster and Walker and which he was under a duty to locate and accept as the eastern boundary of Township 20 South, Range 17 East. We are therefore of the opinion that Connelly’s purported establishment of the east boundary of Township 20 South, Range 17 East farther east than the western boundary of Township 20 South, Range 18 East by Foster and Walker in 1831 was unauthorized and legally without any effect as Township 20 South, Range 18 East had been created by the Foster and Walker survey in 1831, approved 1832, and the western boundary became the common range line between Ranges 17 and 18 of Township 20.
We are in complete accord with the facts and conclusions stated with regard to the surveys, particularly of Connelly and of Foster and Walker in plaintiffs’ brief as follows:
“(i) Connelly clearly was in error on doing what he did (Ex. P-3; Ex. P-3a; Tr., pp. 15-32; 250, 260-263). Connelly primarily erred when he ignored the west boundary of Township 20 South, Range 18 East (and the sections in the western tier), a surveyed monument (Tr. p. 263), and gave effect to his calls for course and distance.
(ii) Connelly had no contract from anyone to survey any land in Township 20 South, Range 18 East. His contract, dated October 13, 1837 (Ex. D-83), with the Surveyor General was limited to surveying all townships south of Township 18 and between Ranges 16 and 28 East which had not theretofore been surveyed (Tr. pp. 172, 181, 183, 202), which, of course specifically excluded Township 20 South, Range 18 East, previously surveyed in 1831 by Foster and Walker. From these facts, it reasonably can be assumed that Connelly intended to locate and tie to the west boundary of Township 20 South, Range 18 East (and the sections in the western tier), and that he did not intend to extend his course and distance calls past that boundary. To assume otherwise would be to assume that that part of his survey was an unauthorized and illegal survey in violation of his contract.
(iii) If the Surveyor General had known that Connelly had not located and tied to the west boundary of Township 20 South, Range *409 18 East (and the sections in the western tier), and had extended his course and distance calls past that boundary and over into that township, the Surveyor General would not have paid .Connelly for that part of his survey which was in error (Tr. pp. 33, 261) or approved the plat of Township 20 South, Range 17 East (Tr. pp. 203, 261). From these facts, there can be no doubt about the intent of the Surveyor General in approving Connelly’s survey and the plat thereof.
{iv) Connelly did not survey, run or mark the East boundary of Township 20 South, Range 17 East. It is apparent from an examination of Connelly’s field notes that the only land which Connelly surveyed, ran or marked in Township 20 South, Range 17 East, was the west and south boundaries and the subdivisions of that township (Ex. A-4, Stip.; Ex. P-3; Ex. P-3a; Tr. pp. 15-33, 260). As a matter of fact, Connelly did not even survey, run or mark on the ground the north and south boundaries of all of the eastern tier of sections (1, 12, 13, 24, 25 and 36) for the full called distance of eighty chains, but merely projected some of them on paper for that distance (Tr. pp. 25, 234). It also is apparent from an examination of the plat of Township 20 South, Range 17 East, that Con-nelly did not survey, run or mark the east boundary of that township (Ex. A-5, Stip.). That plat, by making reference thereon to the fact that Foster and Walker surveyed the east boundary in 1831, obviously adopts the west boundary of Township 20 South, Range 18 East, as surveyed in 1831 by Foster and Walker, as the east boundary of Township 20 South, Range 17 East. Moreover, the plat excludes any possible argument that Connelly or anyone else except Foster and Walker surveyed the east boundary of Township 20 South, Range 17 East, by not only making reference thereon to the fact that Foster and Walker surveyed the east boundary thereof in 1831, but also by making reference thereon to the fact that only ‘The South and West Boundaries, Section Lines and Traverse were Surveyed by G. F. Connelly Deputy Surveyor in the 4th quarter of 1837 under Contract of 13th of October 1837 and paid for in the 1st quarter of 1838. Amounting to 92 miles 68 chains and 15 links.’ These recitations on the plat, of course, could only have been based on the field notes and sketch plat prepared and submitted to the Surveyor General by Connelly (Tr. p. 248). Another reason why it is definite that Connelly did not survey the east boundary of Township 20 South, Range 17 East, is because he was not paid to survey it (Tr. pp. 33, 261). It only can be assumed from the foregoing facts that Connelly, in making his survey, and surety the Surveyor General, in approving his survey and the plat of Township 20 South, Range 17 East, intended to locate and tie to the west boundary of Township 20 South, Range 18 East (and the sections in the western tier), and did not intend to extend his course and distance calls past that boundary.
(v) In surveying the west and south boundaries of Township 20 South, Range 17 East, and the subdivisions of that township, *410 Connelly no doubt was familiar with the rectangular survey system employed by the federal government, the intent of which was that each township would join the other by a common boundary (Tr. pp. 182, 206, 224) and knew that Foster and Walker had previously surveyed the west boundary of the adjoining township and that he was supposed to close his survey against it (Tr. p. 260). This also is indicated by the fact that Connelly mentioned in his field notes that he was unable to find at the southeast corner of Township 20 South, Range 17 East, the corner heretofore set, which obviously was the southwest corner of Township 20 South, Range 18 East, theretofore set by Foster and Walker (Tr. pp. 180, 182, 204, 234). Here, again, it becomes apparent that Connelly, in making his survey and the plat of Township 20 South, Range 17 East, must have intended to locate and tie to the west boundary of Township 20 South, Range 18 East (and the sections in the western tier), and must not have intended to extend his course and distance calls past that boundary.”
Under the Swamp Land Act of 1849, the State of Louisiana on August 9, 1850, made a swamp selection list covering Section 13, Township 20 South, Range 17 East Louisiana Meridian as per certificate of Mrs. Ellen Bryan Moore, Register of State Land Office (Exhibit A). On this list that portion of Section 13 selected contained 560 acres, which did not include the Si/¿ of SW14-Approval to Louisiana as per its swamp selection was made for the land stated in Section 13, Township 20 South, Range 17 East on May 6, 1852. At this time the Foster and Walker survey controlled the eastern boundary of Township 20 South, Range 17 East and the line between the two became the common range line as of the date it was approved in 1832. Therefore, Section 13 at the time the State attained it was bounded on the east by the Foster and Walker range line and not the erroneous and illegal Connelly line.
Unless the resurvey by Gorlinski of the Foster and Walker survey of Township 20 South, Range 18 East, made by the former in 1855 and approved in 1856, affected or changed the Foster and Walker line legally, the latter would still be the controlling survey and the range line established by Foster and Walker in 1831 as the western boundary line of Township 20 South, Range 18 East and the eastern boundary of Township 20 South, Range 17 East. We do not believe as a matter of law that the Gorlinski resurvey could affect the range line as established by Foster and Walker as the State of Louisiana had previously selected and been granted 560 acres of Section 13, Township 20 South, Range 17 East, which was bounded at that time on the east by the west boundary of Section 110, as surveyed by Foster and Walker. The Gorlinski survey could have no effect farther west than the Foster and Walker survey of 1831 and the State could acquire only that part of the land in Section 13 bounded to the east by the Foster and Walker range line. Additionally, other lands not described were admittedly disposed or patented under the Foster and Walker survey of Township 20 South, Range 18 East.
We are therefore of the opinion that the controlling range line between Township 20 South, Range 17 East and Township 20 South, Range 18 East is the one established by Foster and Walker in 1831 and approved in 1832 insofar as the common range line between Section 13 of Township 20 South, Range 17 East and Section 110 of Township 20 South, Range 18 East is concerned.
It is ordered, adjudged and decreed that the judgment of the lower court is hereby *411 annulled, reversed and set aside and that the North 400 acres of Section 110, Township 20 South, Range 18 East, Terrebonne Parish, covered and embraced by the lease from La-Terre Co., Inc. to Union Producing Company, be located on the ground in accordance with the boundaries of said Section 110 surveyed, run and marked in or about 1831 by A. H. Foster and I. N. Walker, as shown on Plat “C” attached hereto and made part hereof, by commencing at a point on the West boundary of said Section 110 as established by said Foster and Walker and running a line Easterly to the Eastern boundary of said Section 110 parallel to the Northern boundary thereof a sufficient distance South of said Northern boundary to contain 400 acres.

*412 It is further ordered, adjudged and decreed that the North 200 acres of Section 13, Township 20 South, Range 17 East, Terrebonne Parish, covered and embraced by the'lease from La-Terre Co., Inc. to Union Producing Company, be located on the ground in accordance with the boundaries of said Section 13, surveyed, run and marked in or about 1831 by A. H. Foster and I. N. Walker, as shown on Plat “C” attached hereto and made part hereof, by a line commencing at a point on the West boundary of Range 18 East as established by said Foster and Walker and running Westerly and parallel to the Northern boundary of said Section 13 to the East boundary of the West 1/2 of the SWj4 of Section 13, a sufficient distance South of said Northern boundary to contain 200 acres.
It is further ordered, adjudged and decreed that Union Producing Company and Texas Gulf Producing Company be and they are hereby recognized as owners, in equal undivided proportions, of the gas and condensate well located in the NJ4 of Section 13, Township 20 South, Range 17 East and marked on Plat A as No. B-2 well and which was completed in October 1960 and has since been operated as a producing gas and condensate well and which under Order No. 416-A-^t of the Department of Conservation of the State of Louisiana, effective October 1, 1960, became and is the Duvall Sand Well for Duvall Unit No. 12, a 265 acre producing unit created by said order, with Placid Oil Company as the operator thereof.
It is further ordered that Placid Oil Company account and remit to Union Producing Company and Texas Gulf Producing Company, plaintiffs-appellants herein for the oil, gas and other minerals produced from the gas and condensate well herein-above described as well B-2 and all royalties paid La-Terre Co., Inc., in excess of those stipulated in the lease from La-Terre Co., Inc., to Union Producing Company, as a result of such production, together with interest thereon at the rate of five (5%) per cent per annum from date such amounts were due, until paid, from which aggregate shall be deducted the cost incurred by Placid in drilling, completing and operating said well for the production of oil, gas and other minerals therefrom, saving and reserving to Placid its rights, if any, to recover from La-Terre Co., Inc., all royalties paid in excess of those stipulated in the lease from La-Terre Co., Inc., to Union Producing Company.
It is further ordered adjudged and decreed that the defendants-appellees pay all costs of this appeal.
Reversed and rendered.

. The location of the northwest corner of Township 20 South, Range 18 East was identical in the Foster and Walker survey and the resurvey by Gorlinski. From this point, however, the Foster and Walker survey veered south four degrees while the Gorlinski resurvey was run due south from the northwest corner and resulted in a distance between the location of the southeast corner according to the Foster and Walker survey and the resurvey by Gorlinski of Township 20 South, Range 18 East of approximately 27 chains.

. We do not consider this case decisive of the issue herein and will not consider the contention of plaintiffs based thereon.

. The eases cited herein have not previously been cited in this opinion; State v. Aucoin, 206 La. 786, 20 So.2d 136; Leader Realty Company v. Lakeview Land Company, 142 La. 169, 76 So. 599; Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566.